Jerry Scala, Plaintiff, *v.* City of New York, Defendant.

Supreme Court, Trial Term, Kings County, February 7, 1951.

*Irving D. Josefsberg* for plaintiff.

*John P. McGrath, Corporation Counsel* (*Harold L. Cowin* of counsel), for defendant.

BARTELS, J. At the end of plaintiff's case and again at the end of defendant's case, defendant moved to dismiss the complaint. After the verdict for plaintiff in the amount of $4,000, defendant moved to set aside the verdict upon all the grounds set forth in section 549 of the Civil Practice Act, except inadequacy, and plaintiff moved to set aside the verdict upon the ground of inadequacy.

On Sunday morning, April 20, 1947, at about 11:30 A.M., plaintiff, who was then twenty-five years of age, while playing softball on the public playground of the defendant, bounded by Court, Lorraine, Clinton and Bay Streets, in Brooklyn, had an accident. The playground was used, among other purposes, for ice skating and softball games. The field was so constructed that the floor was cemented and there was a two-inch curbing above the floor extending around the entire field which separated the field from the pedestrian walk. When the field or playground was flooded for ice skating, the curbing acted as a container for the frozen water. Upon the pedestrian walk and near the curb were placed at various intervals benches constructed of concrete except for the wooden slats constituting the back supports.

Plaintiff was one of a group of young men who played softball upon this playground on many Sunday mornings preceding the accident. Defendant knew that these ball games were being played upon this playground. No baseball diamond was laid out upon the ground but the players improvised or designed their own diamond. Defendant did not furnish the players with any equipment for the purpose. Upon this Sunday plaintiff was in the field playing shortstop when a batter on the opposing side hit a high fly ball towards left field and plaintiff, in attempting to catch the ball, tripped upon the curb, fell and struck the third concrete bench near the curb on the Bay Street side of the playground and sustained serious injuries to his left leg. There seems to be no dispute about the injuries.

Plaintiff claims that the playground was negligently designed and constructed for the purpose of playing softball games, that it was a dangerous and unsafe place for the playing of such games and sues to recover damages for his injuries. Defendant denies that it was negligent in the design and construction of the playground, claims that the playground was a safe place upon which to play softball games and that, at all events, plaintiff, in engaging in the ball game, assumed the risks inherent in the sport.

Plaintiff's case rests heavily upon the opinion of a licensed professional engineer who testified that the plans for the playground called for " roller skating and ice skating " but did not mention softball games; that after examining the plans and the playground itself he was of the opinion that the playground was not of a safe or proper construction for softball games and that it was an unsafe place to play such games because of the curbing and the benches around the area. The admission of

this testimony, although not attacked at the trial, is subject to serious question. The jury, with all the facts before them, could have formed their own conclusion as to the safety of the playground (*Dougherty* v. *Milliken,* 163 N. Y. 527; *Rosenfeld* v. *American Ins. Co.,* 260 App. Div. 697).

There was no evidence adduced that the flooring or the curbing of the playground was in disrepair or in a defective condition or that there were any holes or traps in the playground. Defendant's supervisor of parks for the area testified without contradiction that approximately 18,000 persons had played softball upon that particular playground from 1945 to the date of the accident in April, 1947, without reporting any similar accident arising out of softball games played upon that field. In certain cases it has been held that continued user without accident negatives a claim of negligence arising out of claimed faulty construction. (See *Murray* v. *City of New York,* 276 App. Div. 765, and *De Salvo* v. *Stanley-Mark-Strand Corp.,* 281 N. Y. 333.)

After careful examination of the record I find no evidence of negligence on the part of the defendant that had any causal relation to the accident (*Blume* v. *City of Newburgh,* 265 App. Div. 965, affd. 291 N. Y. 739; *Lobsenz* v. *Rubenstein,* 258 App. Div. 164, affd. 283 N. Y. 600). Plaintiff was not an infant but a young man twenty-five years of age who had admittedly played softball games upon this very field many times previous to the accident. The risks of the curbing and the concrete benches near the curbing were risks that were obvious and necessary to the sport as played on that particular field. His prior experience made him aware of the very hazards and dangers of which he now complains. He not only was aware of these dangers but he voluntarily and freely assumed them. He accepted them with foresight of the consequences. (See *McFarlane* v. *City of Niagara Falls,* 247 N. Y. 340, 349.) Having done so, he must abide by the consequences, although unfortunate. Such voluntary assumption of risks has been crystallized in the Latin maxim — *volenti non fit injuria* (*Zurich Gen. Accident & Liability Ins. Co.* v. *Childs Co.,* 253 N. Y. 324; *Murphy* v. *Steeplechase Amusement Co.,* 250 N. Y. 479). In the latter case Judge CARDOZO remarked (p. 482): "*Volenti non fit injuria.* One who takes part in such a sport accepts the dangers that inhere in it so far as they are obvious and necessary, just as a fencer accepts the risk of a thrust by his antagonist or a spectator at a ball game the chance of contact with the ball."

From common experience we know that amateur ball games are frequently played upon playgrounds and other fields which are not ideally suited for the game. So great, however, is the attraction of the game and the satisfaction experienced therefrom that the players are willing to voluntarily risk the obvious hazards of playing upon a diamond which does not in many respects comply with the official rules of the sport. As stated in *Murphy* v. *Steeplechase Amusement Co.* (*supra*, p. 483): "Nothing happened to the plaintiff except what common experience tells us may happen at any time as the consequence of a sudden fall. Many a skater or a horseman can rehearse a tale of equal woe. A different case there would also be if the accidents had been so many as to show that the game in its inherent nature was too dangerous to be continued without change."

Plaintiff's voluntary and knowing exposure to the risk involved precludes recovery on the ground of the defendant's alleged negligence. Whether or not plaintiff was free from contributory negligence is immaterial. (*McEvoy* v. *City of New York*, 266 App. Div. 445, 447, affd. 292 N. Y. 654; *Porter* v. *Toledo Terminal R. R. Co.*, 152 Ohio St. 463.) Illustrations of the application of the above principle, where recovery was denied as a matter of law, are numerous. A few examples will suffice.

In *Lobsenz* v. *Rubinstein* (258 App. Div. 164, affd. 283 N. Y. 600, *supra*) an infant girl 15½ years of age, a paying guest at a summer camp, slipped into a depression and fell while playing tennis on a court maintained by defendant for the use of guests. Recovery was denied by the Appellate Division and the Court of Appeals upon the ground that plaintiff "knew of the dangerous condition of which she complains and realized the risks in playing tennis on a court in which there were depressions." In *Kanofsky* v. *Brooklyn Jewish Center* (265 N. Y. 634), recovery was denied for personal injuries sustained by an infant girl twelve years of age who fell and broke her arm while attempting to jump over a buck in a gymnasium to which she had gone for gymnastic exercises. In *Cambareri* v. *Board of Educ.* (246 App. Div. 127, affd. 283 N. Y. 741) an infant boy of fifteen years was participating in a so-called relay race in a high school gymnasium, in the course of which team members were required to tumble on a mat, run to a pole and return to another member of the team. After the tumble the mat slipped and the boy fell and injured his right knee and left leg. The complaint was dismissed, the court observing (p. 129):

" In any physical exercise there is, of course, some chance of injury, but it cannot be said that it is unreasonably dangerous to require students to engage in ordinary physical exercise; in fact the State requires such physical training. (Education Law, § 695.) "

. Again in *Weitzen* v. *Camp Mooween* (163 Misc. 312), an infant boy broke his leg in a baseball game played at defendant's summer camp. The accident occurred when plaintiff, running at high speed from first base, slid feet foremost into second base. He claimed the accident occurred because defendant permitted a rock to be used as second base instead of the usual canvas sack and also permitted a hole or depression to remain under or near second base. A verdict in favor of the plaintiff was set aside and the complaint dismissed, the court stating (p. 314):

" The plaintiff in our case was of baseball playing age and corresponding sense, long and thoroughly familiar with the practice, terrain, and equipment of which he now complains, suing by a father who had visited the establishment and seen the property.

" To hold that in such circumstances the proprietor of a boys' camp may be held liable for an injury is to place an undue and unreasonable burden on such institutions, now common and of many different financial grades. Every athletic contest involves some risk, and every factor in the particular situation was open and visible to casual inspection."

Spectators at athletic contests are in the same category. They assume the risks reasonably incidental to the games, such as the risk of being struck by a puck, a flying bat or a foul or wildly thrown ball. (*Lutzker* v. *Board of Educ.*, 287 N. Y. 822; *Ingersoll* v. *Onondaga Hockey Club,* 245 App. Div. 137; *Hammel* v. *Madison Square Garden Corp.*, 156 Misc. 311; *Blackhall* v. *Albany Baseball & Amusement Co.*, 157 Misc. 801; *Adonnino* v. *Village of Mount Morris,* 171 Misc. 383.)

As a corollary, it may be stated that the City of New York is not an insurer of those who make use of its parks or playgrounds. (*Clark* v. *City of Buffalo,* 288 N. Y. 62, 65; *Curcio* v. *City of New York,* 275 N. Y. 20, 23.) As recently remarked in *Pope* v. *State of New York* (198 Misc. 31, 37): " The State is not an insurer of the safety of those who make use of its park facilities. The law requires, however, that it shall exercise reasonable care in the maintenance of its parks, and in the supervision of their use by the public. (*Clark* v. *City of Buffalo,* 288 N. Y. 62, 65; *Curcio* v. *City of New York,* 275 N. Y. 20, 23.)

That does not mean that it must eliminate every danger. If it did, fences could not be erected without creating a liability, nor trees or cliffs left standing for boys to climb.''

Plaintiff claims that in the heat of the game he temporarily forgot the hazard of the curb and benches, and that consequently he was not guilty of contributory negligence. In support of his claim he cites numerous cases to the effect that momentary forgetfulness of a known danger is not contributory negligence as a matter of law. *Bassett* v. *Fish* (75 N. Y. 303); *Dollard* v. *Roberts* (130 N. Y. 269); *Young* v. *Syracuse, Binghamton & N. Y. R. R. Co.* (45 App. Div. 296, affd. 166 N. Y. 227); *Sommerich* v. *Miller* (291 N. Y. 769); and *Palmer* v. *Deering* (93 N. Y. 7, 10), are examples.

In my opinion this principle is not applicable when the plaintiff voluntarily and freely assumes the risk of the known danger. It is applicable only when the plaintiff knows of the danger but does not voluntarily and freely assume its risk. Here knowledge of the defect is not volition. A defendant may have a duty to a plaintiff to keep particular premises free from danger. He cannot discharge that duty by affecting plaintiff with knowledge of the danger. (See *Thomas* v. *Quartermaine,* 18 Q. B. D. 685, 697.) That is not this case. Here the plaintiff willingly assumed the risk. In other words, if the plaintiff has a choice of doing or not doing the act and deliberately chooses to do the act which involves known hazards, then the consequences are of his own choosing. He was under no obligation to play baseball upon this particular playground. He deliberately chose to do so with full knowledge of the curb and the benches. In such a case momentary forgetfulness of the danger is one of the risks he assumed; otherwise the doctrine of assumption of risk would be meaningless. (See Charles Warren, '' *Volenti non fit injuria* in Actions of Negligence '' 8 Harv. L. Rev., 457, 459; Bohlen, '' Voluntary Assumption of Risk '', 20 Harv. L. Rev., 14, 91; 38 Am. Jur., Negligence, § 173; *Walsh* v. *West Coast Coal Mines,* 31 Wn. 2d 396, and *McEvoy* v. *City of New York, supra,* p. 447.)

Considering the extent of plaintiff's injuries, the amount of the verdict seems inadequate and suggests that the jury was not fully satisfied with respect to defendant's liability.

Plaintiff's motion to set aside the verdict is denied. Defendant's motions to set aside the verdict and dismiss the complaint are granted. Exception to plaintiff. Thirty days' stay and sixty days to make and serve a case on appeal.