**Leslie Andre EISENHOWER, a/k/a Leslie Andre and Leslie Y. Ford, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 60–C–932.

United States District Court
E. D. New York.
May 6, 1963.

Lee R. Fenton, New York City, for plaintiff. Warren E. Magee, Washington, D. C., of counsel.

Joseph P. Hoey, U. S. Atty., Eastern Dist. of New York, for defendant. Carl Golden, Asst. U. S. Atty., of counsel.

BARTELS, District Judge.

This is an action under the Federal Tort Claims Act, 28 U.S.C.A. § 1346, for personal injuries alleged to have been sustained by plaintiff on October 13, 1958, when, as a member of the Gypsy Markoff Troupe, she fell in the course of her performance as a tap dancer at the United States Navy Receiving Station, Brooklyn, New York. The Gypsy Markoff Troupe was engaged by the U.S.O. and invited by the Secretary of the Army to render certain performances to the military personnel abroad and received invitational travel orders on October 10, 1958 to proceed on or about October 15, 1958 from New York to various European countries. Before embarking the Troupe requested an opportunity to give a dress rehearsal at the Brooklyn Navy Yard and permission was granted by the Commander of the Third Naval District.

Prior to October 13, 1958, plaintiff knew that she would appear at the United States Navy Receiving Station in Brooklyn but no contact was made with the defendant by either plaintiff or Gypsy Markoff before the arrival of the Troupe, with respect to the condition of the stage floor, and there was no contract or remuneration for this performance. When the members of the Troupe arrived about 6 P.M., they were escorted to the auditorium, where the stage was lit and the stage floor was in full view, and thereafter to dinner and to the back stage for the purpose of preparing for the performance. There was an opening number about 8:15 P.M., in which all members of the Troupe, including the

plaintiff, appeared in a chorus line arrangement in street shoes; thereafter there were individual performances including a Charleston dance. Plaintiff appeared at or near the last number about half an hour after the opening number, wearing leather soled tap dance shoes with aluminum plates on the tips and on the heels. Her dance was in the nature of an acrobatic tap dance involving dancing, ballet swings and acrobatic stunts. After she had begun to dance and had completed about thirty or thirty-two spins, she realized that the floor was too slippery and accordingly tried to "ad-lib". Thereafter she slipped and fell. She then arose, continued her act and made another appearance in the grand finale. She now claims that she sustained serious injuries from this fall.

Plaintiff contends that the stage floor was entirely too slippery for tap dancing; that it was negligence on the part of the defendant to wax the stage floor to make it so slippery in view of this type of performance, and that no stage floor upon which tap dancing is performed, is ever waxed or polished. She claims that after the opening number she saw that the floor was too slippery and she was afraid she might fall. She said she then spoke to one of the uniformed men in the wings who was acting as a stage-hand, requesting that the stage floor be mopped with cold water to remove the danger before her number but that nothing was done. However, she did not speak to Lieutenant Bessie Bryant who apparently was in charge of the auditorium. Moreover, two witnesses on behalf of the Government were produced, who denied that any such request was ever made and testified that this stage floor had been prepared and waxed in the same manner for two years previous and two years subsequent to the accident, during which period tap dancers had appeared thereon both before and after plaintiff's accident, without any mishap. Upon examination plaintiff admitted that she had danced on this stage floor a long time before but could not remember how long ago. The Government also introduced evidence showing that tap dancing is performed regularly on polished dance floors and in night clubs, and that rubber soles are used on tap dance shoes if there is any question of danger arising from dancing on polished floors, and that resin is sometimes employed by tap dancers where floors are deemed slippery.

## II

In its pleading the defendant denied negligence and raised an affirmative defense of assumption of risk. Much confusion, as well as considerable amount of debate, has been engendered by the defense of assumption of risk.[1] This doctrine may be invoked under two different sets of circumstances, (i) where defendant had no duty to plaintiff, in which case plaintiff's assumption of risk is simply a counterpart of the defendant's lack of duty, and (ii) where defendant has a duty to plaintiff but has breached this duty and plaintiff, with full knowledge thereof, voluntarily and deliberately assumes the risk of this breach.[2] In the latter case plaintiff may recover even though he assumed the risk, provided his assumption of the risk was reasonable under the circumstances; however, if such assumption of risk is unreasonable, he may not recover.[3] In this category the assumption of risk doctrine often overlaps the theory of contributory negligence. It has been contended by some that there is no such defense of implied assumption of risk inasmuch as this phrase simply describes either no duty on the part of the defendant or contributory negligence on

---

1. Where one expressly assumes the risk he consents to the conduct of the defendant and is not entitled to recover. See Restatement, Torts, § 892 (1934). It is the implied assumption of risk that poses the question.

2. 2 Harper and James, The Law of Torts, § 21.1 (1956); Restatement (Second), Torts, Notes, § 893, pages 70–106 (Tentative Draft No. 9, 1963).

3. 2 Harper and James, The Law of Torts, § 21.1, pages 1165–1168 (1956).

the part of the plaintiff.[4] To litigants themselves the theory of recovery may be simply a matter of emphasis or semantics since they are interested only in the proper result; but there is a difference. If the issue is one of contributory negligence, then the burden of proof, at least in New York, is upon the plaintiff and in cases involving comparative negligence, the contributory negligence simply reduces, but does not bar, recovery; whereas if the defense is one of assumption of risk, then the burden of proof is upon the defendant.

Contributory negligence is based upon an objective test. Assumption of risk embraces not only knowledge of the physical condition and appreciation of the danger produced thereby, but also a voluntary choice to proceed. See McEvoy v. City of New York, 1943, 266 App.Div. 445, 42 N.Y.S.2d 746. If plaintiff has a choice of doing or not doing the act and voluntarily chooses to do the act, which involves known hazards, then the consequences are of his own choosing. Scala v. City of New York, 1951, 200 Misc. 475, 102 N.Y.S.2d 790.

There are some risks which a plaintiff may assume but the assumption may not be voluntary. Such is not the case here. Again, if a defendant has a duty to a plaintiff which he has breached, the plaintiff's relationship to the defendant may be such that he has a right to assume the risk without being barred from recovery. Pomeroy v. Inhabitants of Westfield, 1891, 154 Mass. 462, 28 N.E. 899; cf., Paubel v. Hitz, 1936, 339 Mo. 274, 281, 96 S.W.2d 369, 373. To a licensee a defendant owes only a limited duty and the plaintiff takes the risk of obvious and known dangers present upon the premises although the defendant must advise him of all latent defects. However, if plaintiff is an invitee, the defendant has an affirmative duty to provide reasonably safe premises or to acquaint the plaintiff with any unreasonably dangerous condition that may exist thereon and to refrain from active conduct which is foreseeable and unreasonably dangerous to plaintiff.[5] The key to the solution depends upon the relationship between the parties.

There has been some question in this case as to whether the plaintiff was an invitee or a licensee. The burden is upon the plaintiff to establish the nature of her relationship with the defendant if she relies upon the position of an invitee.

Assuming the plaintiff in this case was an invitee, it would be the duty of the defendant to provide a reasonably safe place for the Troupe to perform a customary type of show or to acquaint the plaintiff with the existence of any unreasonably dangerous condition which would interfere with that type of performance. The Government, however, would not be an insurer of the premises.[6] If this was not the customary type of show but included some specialty which required the stage floor to be in a certain condition for safety purposes, then it would be necessary to charge the defendant with notice of this fact, either actually or constructively, before the defendant would be obligated to acquaint the plaintiff with the fact that the stage floor would not be in that condition.[7] The tap dance performed by the plaintiff was one that was performed with metal soles and heels. Testimony was adduced on behalf of the

---

4. See Restatement (Second), Torts, Notes, § 893, pages 70–87 (Tentative Draft No. 9, 1963).

5. See 2 Harper and James, The Law of Torts, § 27.1 (1956). Persons such as tenants in an apartment house and travelers upon sidewalks who have a right to be present upon the possessor's premises without his consent, have superior rights to those of an ordinary invitee on private premises. See Restatement, Torts, § 345 (1934); Paubel v. Hitz, supra.

6. See Annot., 63 A.L.R.2d 591, 597 (1959).

7. After giving such notice there would be no obligation on the part of the defendant to furnish an unpolished stage floor to the plaintiff, who was an invitee. Restatement, Torts, § 343(c) (ii) (1934); but see 2 Harper and James, The Law of Torts, § 27.13 (1956).

plaintiff that stage floors were generally unpolished and that a polished stage floor was an unsafe place for the performance of a tap dance number.[8] But there was no testimony indicating that the defendant was at any time notified that a tap dance would be performed upon this stage. On the other hand, the defendant offered testimony indicating that a polished dance floor is a reasonably safe place for a tap dance inasmuch as such performances often occur on dance floors and in night clubs and, further, that when such a polished surface is not deemed a safe place for tap dancing, rubber soles and/or resin are generally used to provide the necessary safety.

■■■■ Based upon the evidence and the applicable principles of law, the Court finds that the Government had no duty under the circumstances to provide an unpolished stage floor for the plaintiff's tap dance number since (i) it was not notified in advance and it had no reason to expect that such a number would be performed; and (ii) even if it could be charged with such notice, the plaintiff has failed to sustain the burden of proof that a polished floor would be unsuitable or reasonably unsafe for such a performance. The stage platform, as provided by the defendant, had been proven safe for performances theretofore and thereafter given, including tap dancing, and also for the performances given by the other members of the plaintiff's own troupe. Upon all those occasions the floor had been prepared in the same manner. Since the Court finds that the defendant performed its duty to the plaintiff, it need go no further.

■■■■ Plaintiff, however, insists that she had a right and, indeed, a duty to assume the risk by reason of the ethics of her profession as reflected in the maxim "the show must go on". Admit-tedly, plaintiff had an opportunity to and did see the condition of the polished floor about half an hour before her performance and fully appreciated the dangers, if any existed, in connection therewith. She had no right to be on this stage floor except with the consent of the defendant; consequently she was not in a position as such an invitee to say that she had a right to assume the risk. She cannot rely upon any stage tradition to exculpate her from the consequences of her own choice if such tradition contradicts the legal principles applicable. Whether the plaintiff's assumption of the risk was reasonable or unreasonable was immaterial under the circumstances.

■■■■ Finally, it should be noted that the testimony in reality indicated that the plaintiff was a licensee rather than an invitee. The Gypsy Markoff Troupe requested permission to use the Government's premises as an accommodation for a dress rehearsal. It rendered its performance under permission and not by invitation of the Government or pursuant to any contract with the Government. It is true that the military personnel at the Base witnessed the performance but this apparently was only an incident to the permission. As a licensee there is no question that plaintiff was obligated to take or leave the premises "as is" except for latent defects,[9] concerning which it would have been the Government's duty to advise the plaintiff. There is no claim that there were any latent defects upon the stage floor. The Government's obligation to the plaintiff was therefore fully performed.

The above constitutes the Court's findings of fact and conclusions of law. Settle order within ten (10) days on two (2) days' notice.

---

8. With respect to ordinary ballroom dance floors, it has been held that to facilitate their proper use, it is customary to wax them in order to make them slippery and that plaintiff, with knowledge of this condition, assumes the risk of slipping. Fishman v. Brooklyn Jewish Center, Inc., 234 App.Div. 319, 255 N.Y.S. 124 (1932).

9. "[A] social guest, having the status of a licensee, must take the premises as he finds them, and he is entitled to no greater protection than the members of the family." Krause v. Alper, 1958, 4 N.Y. 2d 518, 520, 176 N.Y.S.2d 349, 351, 151 N.E.2d 895, 897.