MARCELLE PETERSON, an Infant, by SYLVESTER PETERSON, Her Guardian ad Litem, Respondent, *v.* THE CITY OF NEW YORK, Appellant.

(Argued March 15, 1935; decided April 17, 1935.)

*Paul Windels, Corporation Counsel (Paxton Blair, Seymour B. Quel* and *Samuel A. Bloom* of counsel), for appellant.

*I. Arnold Ross, Wm. Burdell Banister* and *Morton A. Shapiro* for respondent.

LOUGHRAN, J.   In one of its public playgrounds the defendant city of New York maintained a " Lullaby " swing, a bench suspended fifteen inches above the ground and divided into seven seats in a row.   Plaintiff, a girl of eight, sat in a middle seat.   An armrest or handbar separated her from a child on either side.   A boy stood between a pair of uprights on either end of the bench. The boys, each holding to an upright, put the bench in motion by taking turns at " pumping " against it.   The movement was, not forward and backward, but from side to side.   Two directors of play, assigned by the municipal authority having jurisdiction, were on the play-ground.   A director, teaching a May-pole dance to a group of children, was but a few feet away from the swing, having appointed four older children monitors of its operation.

After a moment or two of swinging, plaintiff, who had recently suffered an illness, became dizzy.   Hearing her scream, one of the monitors directed the " pumpers " to stop.   Before the movement of the bench was arrested, plaintiff fell from it.   One of her arms was fractured and resulting infection necessitated its amputation.   By the judgment appealed from, defendant is made answerable for her injuries.

In his charge to the jury the trial judge said: " There is nothing in the evidence in this case to indicate that the

swing was improperly constructed at the start, or that it was improperly maintained, or that it was improperly operated at this particular time. So that it gets down to a question as to whether or not the city properly supervised it. Was it within reasonable requirements to have someone closer by and if they were closer by, could they, or might they have been able to prevent the accident or these injuries that happened at this particular time? That is the controlling question in this case." The verdict determines that breach of the duty so defined caused the accident.

We think there is no foundation in principle or authority for such a theory of liability.

That it was the duty of defendant to provide an adequate degree of general superintendence of recreation at this playground is not denied. (See *Augustine* v. *Town of Brant*, 249 N. Y. 198, 203, 204; *Van Dyke* v. *City of Utica*, 203 App. Div. 26, 29.) Defendant in fact discharged that duty. There had been no similar accident. Plaintiff was *sui juris*. Concededly nothing in her physical appearance indicated unfitness to go upon the swing. Her mother accompanied her to the playground. To say, as in effect the jury were told, that direct management of the swing by an attendant would perhaps have prevented plaintiff's injuries is to allow a verdict to be reached by a guess. But even if the jury were right in this instance, we think such a requirement of immediate official supervision would have been unreasonable in the circumstances, and that, therefore, there is no evidence of defendant's negligence. (*Kanofsky* v. *Brooklyn Jewish Center, Inc.*, 265 N. Y. 634; *Purkis* v. *Walthamstow Borough Council*, 151 L. T. [N. S.] 30 [C. A. 1934].)

The judgment of the Appellate Division and that of the Trial Term should be reversed and the complaint dismissed, with costs in all courts.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS, CROUCH and FINCH, JJ., concur.

Judgments reversed, etc.