STANLEY GARBER, an Infant under Fourteen Years of Age, by FRED GARBER, His Guardian ad Litem, and FRED GARBER, Appellants, v. CENTRAL SCHOOL DISTRICT NUMBER ONE OF THE TOWNS OF SHARON, SCHOHARIE COUNTY, NEW YORK, and CHERRY VALLEY AND ROSEBOOM, OTSEGO COUNTY, NEW YORK, Respondent.

Third Department, May 12, 1937.

Sharon J. Mauhs [Michael D. Reilly and Dermot C. Reilly of counsel], for the appellants.

Earl S. Jones [Carter & Conboy of counsel], for the respondent.

McNAMEE, J.  On proof of the facts stated the defendant contends that there was no evidence from which an inference may be drawn that the board of education failed in any duty which brought about the infant plaintiff's injury, and, therefore, the complaint was properly dismissed.  Defendant cites a number of cases said to support its theory, either as a direct authority or as looking in the same direction.

One was a case where a child ran into an open elevator shaft of the school, while at play, after notice to the board of the defect, and failure to repair.  It involved only the maintenance of the school grounds, and recovery was allowed.  (Lessin v. Board of Education, 247 N. Y. 503.)  Another arose in a school gymnasium where a violent game was being played, without protective covering of a brick side wall with which a participant collided.  The decision turned upon the lack of evidence of a common practice to furnish such protection, and judgment for plaintiff was reversed and a new

trial ordered (*Bradley* v. *Board of Education*, 243 App. Div. 651) On a second trial the plaintiff had a verdict and the judgment thereon was affirmed (*Bradley* v. *Board of Education*, 247 App. Div. 833; affd., without opinion, 274 N. Y. 473). Another was one involving injury to a student by a buzz saw maintained in the manual training department of a school, and where the teacher failed to adjust a guard which had been provided by the board, and recovery was not allowed (*Johnson* v. *Board of Education*, 210 App. Div.' 723). But where the board installed and permitted to be used by pupils an unguarded buzz saw, it was held liable (*Herman* v. *Board of Education*, 234 N. Y. 196). Still another was one in which a tumbling mat in a school gymnasium slipped in the progress of a contest, under the direction of the instructor. There was no claim that the conditions were improper, or the mat defective, or even that the instructor was negligent; and the claim was dismissed (*Cambareri* v. *Board of Education of Albany*, 246 App. Div. 127). Another was the case of a child of twelve who with the members of her class was jumping over a " buck " in a school gymnasium, under the direction of her instructor. She fell and was hurt. There was no suggestion that the instructor's incompetence added any danger to the evident risks of supervised play. And if there were negligence, it was that of the instructor (*Kanofsky* v. *Brooklyn Jewish Center, Inc.*, 265 N. Y. 634). In none of these did it appear that the board of education had failed in its duty to provide competent instructors or proper supervision. Thus those decisions failed to touch the case under review.

Likewise the *Hamburger* case does not aid the respondent. There a university student was injured by an explosion in the chemical laboratory, alleged to be due to the negligence of an instructor who had been carefully selected. And it was held that a charitable institution was not liable on those facts (*Hamburger* v. *Cornell University*, 240 N. Y. 328, 340). The *Peterson* case is somewhat closer in principle, but not in fact. There a child of eight years who came to a public playground with her mother, became dizzy while occupying a " Lullaby " swing, fell, and was injured before the swing could be stopped. There were two playground directors on the grounds, one a few feet away, and four older children acted as monitors of the swing in question. The Court of Appeals disposed of that case on the ground of *reasonable supervision* only, and held that to require immediate official supervision of that particular swing at all times would be unreasonable on the facts of that case (*Peterson* v. *City of New York*, 267 N. Y. 204). It will be noted that in both of the last two cases mentioned the question of the fitness of the supervisors was not raised, and

in the last one only the *extent* of competent supervision was challenged.

In the *Hamburger* case the court refers to the surgeons of a hospital and the professors of a university as masters and not servants, in the conduct of their work; and observes that, "They have the independence appropriate to a company of scholars." The hospital or the university is not responsible for their negligence. And then the opinion goes on to say, "We find no evidence that any one in the service of the defendant, whether instructor or mere employee, had been carelessly selected." And then noting the rejection by the courts of this State of the "trust fund theory" of liability, the opinion states: "With us a hospital or university owes to patients or to students whatever duty of care and diligence is attached to the relation as reasonably implicit in the nature of the undertaking and the purpose of the charity. All that is thus included is not susceptible of enumeration in advance of the event. It cannot be less, however, than appropriate investigation of the character and capacity of the agencies of service from the highest to the lowest. This is a duty that devolves upon the corporation itself, and one not to be shaken off by delegation or surrender" (pp. 338, 339). And in the *Peterson* case it was said: "That it was the duty of defendant to provide an adequate degree of general superintendence of recreation at this playground is not denied" (p. 206). And in the *Lessin* case the court, holding that the duty of caring for school buildings is a continuing one imposed directly on the board, amplified the rule applied there as follows: "The members of the board cannot discharge that duty collectively without the intervention of agents or employees, but the duty of the board is not complete when it appoints such agents or employees. It acts through them. If they fail to discharge properly the functions assumed by the board, the board is responsible for such failure, aside from any rule of agency. The board itself has in such case failed to perform a duty imposed upon it by law, and liability may be predicated upon its own wrong" (p. 511).

Section 310 of the Education Law is applicable to this defendant (Education Law, art. 6-B, § 183). That section has to do with the "Powers and duties of boards of education," as stated in its title. The head paragraph of that section, in so far as applicable, reads: "The said board of education of every union free school district shall have power, and it *shall be their duty:* * * * 2. To establish such rules and regulations concerning the order and discipline of the schools, in the several departments thereof, as they may deem necessary to secure the best educational results. * * * 12. To have in all respects the superintendence, management and control of said union free schools, and to establish therein, in con-

formity with the regents rules, an academic department, * * *. 15. To contract with and employ * * * qualified teachers, * * * and employ such persons as may be necessary to supervise, organize, conduct and maintain athletic, playground and social center activities, * * *. The regular teachers of the school may be employed * * * by separate agreement * * * for one or more of such purposes."

The statute contains the clear mandate that it shall be the " duty " of the board to establish rules and regulations concerning order and discipline in the schools, and in the departments thereof. And the fact that subdivision 2 contains the clause " as they may deem necessary to secure the best educational results," does not relieve the board from its statutory obligation; at most, it permits the exercise of the sound discretion of the board in prescribing the rules and regulations. It is not a mere license to have order and discipline in the schools and their departments or not, as a matter of choice. Subdivisions 12 and 15 appear to contain a clear legislative intent to authorize orthodox education on the one hand, and athletic activities on the other, and provide for qualified teachers to teach " in an academic department in conformity with the Regents Rules, " and it also provides for the employment of " such persons *as may be necessary* to supervise * * * athletic * * * activities." It also provides that " regular teachers " may be employed by " separate agreement " for athletic purposes. While these distinctions in no way call for an application of a different principle of liability, it does make clear that the board has an obligation in the case of one class of instructors which is as direct and impelling as in the case of the other. And while the board would not be liable for the negligence of either, it may not escape liability if it fails in its duty to select suitable persons for either class. As was said in the *Hamburger* case: " This is a duty that devolves upon the corporation itself, and one not to be shaken off by delegation or surrender." And when the board gave over its authority to the principal, or a janitor, and imposed its obligation upon him, the duty of the board was not altered. It acted, if at all, through him. (*Lessin Case, supra*, p. 511.)

In this case the board took charge of the infant plaintiff on leaving home in the morning in the school bus, and did not release that control until he was again returned thereto, after school hours. He was not only confined in the gymnasium with his fellows, but they were free to make such use of it and its equipment as suited their fancy. There was no " regular teacher " present, nor any physical instructor, nor " such person as may be necessary to supervise * * * athletic * * * activities." By common practice the only supervision, direction or control provided was that

of a janitor. It might well be that one employed as a janitor would be competent to direct athletic activities. But the proof here is that the one to whom supervision was intrusted was in fact a janitor, and nothing else. The proof is that he was employed as a janitor, and had only the training and experience of a janitor; and no investigation of his character otherwise was attempted; and on the trial, evidence as to his qualifications to supervise was excluded.

We may not accept the theory or apply the principle that young boys in the grades of a public school may be restrained in a gymnasium equipped for play, and left there to their own devices, subject only to the control of one without training, skill or experience, of one who makes no pretense to the qualification necessary to the duties assigned. It is our view that this was a palpable failure to meet the requirements of the common-law rule, as well as an evident neglect of the duty imposed by the statute. It is indicative not only of a disregard of the statutory mandate to make rules and regulations to establish order and discipline, but also to carefully select suitable supervisors to whom the safety of children was to be entrusted while under school restraint.

In the *Williams* case an elderly farm woman was employed by a school district to transport children to and from another district. One of the children was injured by an unguarded wheel of the wagon. In that case the Fourth Department held that it was the duty of the district to furnish a reasonably safe mode of conveyance, and that meant " not only a vehicle reasonably fit for the purpose in view, but also such reasonable supervision and care as the circumstances demand. Both must be considered together. A wagon otherwise dangerous might be reasonably safe with more supervision. With slight supervision reasonable safety might demand a more secure type of wagon. The purpose in view was the fairly safe transportation of ten or twelve children varying from six to twelve years of age," having in mind childish proclivities and comprehension of danger (*Williams* v. *Board of Trustees*, 204 App. Div. 566). And on a subsequent appeal in that action, the Fourth Department said again, in view of the obvious immaturity of judgment of children and the lack of sense of responsibility for their own safety, that it was the duty of those conveying such children to " exercise independent judgment for their protection;" and that while the woman in charge of the wagon was strong and intelligent, and could drive, and could do a man's work on the farm, that " does not necessarily mean that she was a proper custodian of small children," but that the board had " the duty of selecting a competent person as driver and custodian " (*Williams*

v. *Board of Trustees*, 210 App. Div. 161, appeal denied by Court of Appeals, not reported). The analogy between the qualifications of the driver in the *Williams* case and those of the janitor in this one is evident.

In so far as his qualifications to supervise the play were concerned, the janitor was the representative of the board, and the board was responsible for his acts to the extent that they were chargeable to his incompetence (*Lessin* v. *Board of Education, supra,* p. 511). The board made no investigation. And in view of the character of the game, the age and size of the infant plaintiff, the equipment used, and the conduct of the janitor, it may not be said as a matter of law, that the janitor possessed either the knowledge, the skill, or the experience to supervise or direct, in the circumstances; the evidence indicates that the board not only had no reason to believe that he did, but points in the opposite direction. The very reason for the careful selection of persons qualified by experience and judgment, for such duties, is to prevent the kind of accident involved here. And clearly there was a question of fact for the jury, both at common law and under the statute, whether on the evidence the board had met its duty to provide rules and regulations for the establishment of order and discipline, and also whether the board exercised reasonable care in providing reasonable supervision of the infant plaintiff while in its restraint and under its control.

The trial appears to have proceeded with a restricted view of the responsibility of the board, and, therefore, much admissible evidence was excluded, over the objection and exception of the plaintiffs. Evidence was offered to prove that the physical instructor, or any other competent person, in keeping with the common practice, was not present during the noon hour in question, to show the correct or common use of mats, to show the lack of qualifications of the janitor to supervise play, to show that the board members knew of the practice of janitors acting as supervisors. The exclusion of this evidence, and other proof of like character, was reversible error. The issues involved order and discipline and the competency of supervision, and whether the board fulfilled its duty in those particulars. The evidence rejected was competent on these ultimate facts.

The judgment and order appealed from should be reversed, with one bill of costs to the plaintiffs, to abide the event, and a new trial granted.

HILL, P. J., CRAPSER, BLISS and HEFFERNAN, JJ., concur.

Judgment reversed on the law and facts, and new trial granted, with costs of this appeal to the appellants.