AGNES CURCIO, as Administratrix of the Estate of JOHN A. CURCIO, Deceased, Respondent, *v.* THE CITY OF NEW YORK, Appellant.

Argued June 8, 1937; decided July 13, 1937.

*Paul Windels, Corporation Counsel (Frederick vP. Bryan and Leonard M. Wallstein, Jr.,* of counsel), for appellant. There was no proof that defendant was negligent or failed in any duty which it owed to the decedent. (*Swan* v. *Riverside Bathing Beach Co.,* 132 Kan. 61; *Flora* v. *Bimini Water Co.,* 161 Cal. 495; *Peterson* v. *City of New York,* 267 N. Y. 204.) Even had the defendant been negligent there was no proof that such negligence was the proximate cause of the death. (*Laidlaw* v. *Sage,* 158 N. Y. 73; *Maher* v. *Madison Square Garden Corp.,* 242 N. Y. 506; *Bertalot* v. *Kinnare,* 72 Ill. App. 52.)

*Charles J. Buchner* for respondent. The negligence of the defendant was clearly proven. (*Larkin* v. *Saltair Beach Co.,* 30 Utah, 86.) The negligence of the defendant was the proximate cause of the death. (*Esposito* v. *St. George Swimming Club,* 143 Misc. Rep. 15; *Martin* v. *Herzog,* 228 N. Y. 164; *P. G. Poultry Farm* v. *Newtown B. P. Mfg. Co.,* 248 N. Y. 293.)

RIPPEY, J. This is an action to recover damages for the death by drowning of John A. Curcio in a swimming pool maintained by the defendant in a building known as the Public Baths on the corner of President street and Fourth avenue in the borough of Brooklyn, New York. The case was tried before the court without a jury, and resulted in a verdict for the defendant dismissing the complaint. The Appellate Division, second department, reversed the judgment of the Trial Term on the law and the facts and granted a new trial, one justice dissenting. The defendant appeals to this court on a stipulation for

judgment absolute in the event that the decision of the Appellate Division is affirmed. If there is an issue of fact in the case, the judgment of the Appellate Division must be affirmed, even though the Court of Appeals disagrees with the Appellate Division as to where the weight of the evidence lies. (*World Exchange Bank* v. *Commercial Cas. Co.*, 255 N. Y. 1.) The appellant contends, however, that there is no evidence of negligence on the part of defendant, or, if it should be held that there was such evidence, that it was not the proximate cause of the drowning, and that a reversal on the facts by the Appellate Division is error of law, which the Court of Appeals may review. (*Rockowitz C. & B. Corp.* v. *Madame X Co.*, 248 N. Y. 272.)

John A. Curcio was, at the time of the accident, over six feet tall, nearly twenty-two years of age, a student at Brooklyn College, about to graduate the following June in the medical course, and a member of the swimming team of the college. He and three other young men, who were expert swimmers, were swimming in the pool between four-thirty and five P. M., January 31, 1933. One of the swimmers heard a groan or yell after they had been swimming around for a few minutes, but paid no attention to it, and he and another boy left the pool and went on the platform for the purpose of diving, where they remained for about a minute, when the lifeguard, in charge of the pool and then standing on the balcony overlooking the pool, pointed to the water and shouted, "Quick, down there," whereupon one of the men on the platform dived into the pool, secured Curcio, brought him to the side, and he and the lifeguard, who had by that time descended from the balcony and had reached the platform, pulled Curcio out of the water. Immediate efforts at resuscitation failed. The medical testimony showed that Curcio died from asphyxiation and that there was an abrasion one-half inch by three-eighths inch on the right cheek midway between the eye

and ear, abrasions on the bridge of the nose, an abrasion one-quarter inch long of the upper lip at the right of the midline, and an abrasion of one-quarter inch in diameter on the left side of his chin. No one saw Curcio enter the pool, and there is no evidence, other than above stated, as to what happened after he entered the pool.

There was a balcony running around the building and above the platform, from which entrance was had to the pool. A view of this pool was at all times available from the balcony. The pool was forty feet wide by sixty feet long, six feet deep at one end, with the bottom sloping upward so that the water was three feet deep at the shallow end. Curcio was found in the water at a depth of about five feet. The use of the pool was customarily given over to small boys up to four-thirty P. M. each afternoon. At that time on the afternoon in question the guard ordered about sixty boys out of the water and proceeded with them to the balcony, where they had their shower and dressing rooms. Generally, older men did not have access to the pool until about five P. M., the interval between four-thirty and five P. M. being held open to enable the youngsters to get out of the pool, dress, and leave the building. The evidence showed that the lifeguard maintained at this pool had passed all required examinations, was thirty-eight years of age, five feet eleven and three-quarters inches tall, weighed one hundred and ninety pounds, and had been employed by the defendant in the same capacity for a period of fifteen years.

There was no evidence that the city charged any fee for the use of the pool or the facilities of the building in question. There was no evidence that there was any defect of construction. The city was not an insurer of the lives of those who used the pool. Its only duty was to exercise ordinary care in its supervision, construction and maintenance of the pool. A person who is *sui juris* and engages in such a sport as swimming accepts the dangers inherent in the sport so far as they

are obvious and necessary. (*Murphy* v. *Steeplechase Amusement Co.*, 250 N. Y. 479.) The duty of exercising ordinary care required the defendant to provide an adequate degree of general supervision. (*Peterson* v. *City of New York*, 267 N. Y. 204.) The city performed its duty in furnishing a lifeguard, experienced and competent. From his position on the balcony the lifeguard was the first to see Curcio in the water and gave instant attention to his removal from the pool and to efforts at resuscitation. He was tending to one of his duties incidental to his employment in looking after the young boys, but at the same time gave watchful attention to the pool. There is no evidence from which any inference could be drawn that his presence on the platform next to the water would have prevented the accident or that " by act or omission of the defendant or any of its employees the boy was placed in a position of danger which caused his death, or that any greater care by the defendant could have averted accident." (*Maher* v. *Madison Square Garden Corp.*, 242 N. Y. 506, 507.) Constant attendance of the lifeguard on the platform was not required. " Such a requirement of immediate official supervision would have been unreasonable in the circumstances." (*Peterson* v. *City of New York*, *supra*, p. 206.) The lifeguard could not be at all parts of the building at once. We find no evidence of any violation of duty on the part of the defendant which presents a question of fact.

The Appellate Division asserted that whether the defendant maintained a bathing master, as required by section 312 of the Public Health Law (Cons. Laws, ch. 45; Laws of 1909, ch. 49) and regulation 33 of the Board of Health of the City of New York, adopted June 28, 1917, and, if it did not, whether its violation of these regulations constituted negligence which was the proximate cause of Curcio's death, were questions of fact. Regulation 33 provides that " a bathing master or life-guard who shall be an expert swimmer and who shall be

in constant and watchful attendance during bathing hours shall be stationed at every such bathing establishment." This regulation relates, however, to beach bathing establishments only. It does not relate to swimming pools of fresh water in the midst of the city. Even though it had related to the particular swimming pool in which Curcio was drowned, the conceded fact is that a lifeguard was furnished by the city and was in attendance at the time. Plaintiff produced no evidence that he was incompetent, inattentive or inefficient. Furthermore, section 340 of the Sanitary Code (New York Code of Ordinances, ch. 20, art. 17), providing for the regulation of bathing establishments, defines that term as used in the regulations referred to as applying only to places conducted for hire, and the last sentence in section 312 of the Public Health Law, which contains a provision similar to regulation 33 above quoted, provides that nothing in that section " shall be construed in any way to affect any bathing establishments, in any city or municipality, at which there is maintained at public expense a life-saving guard." Thus the provisions of section 312 of the Public Health Law and regulation 33 above quoted are not applicable. Had they been applicable there is no evidence that they were not fully complied with.

The order of the Appellate Division should be reversed and the judgment of the Trial Term affirmed, with costs in this court and in the Appellate Division.

CRANE, Ch. J., LEHMAN, HUBBS, LOUGHRAN and FINCH, JJ., concur; O'BRIEN, J., taking no part.

Ordered accordingly.