Foster, P. J.
The infant plaintiff herein was seriously injured on the grounds of the defendant Central School District. He alleges that his injuries were due to negligence on the part of the hoard of education of the district and the supervising principal of the school. Upon a jury trial he received a verdict of $45,000. From the judgment entered thereon and the order *265 denying a motion for a new trial, defendants appeal to this court.
The jury could have found the following facts. Plaintiff was a boy eight years of age at the time of the accident, and in the third grade of the school. He lived within the district, but at some distance from the school and was transported with other pupils in a school bus each day. On the day of the accident he was dismissed from his class room at about 3:30 p.m., and sent outside to play on the school grounds under the supervision of two older pupils, one of whom was a girl only thirteen years of age. This interim play period lasted until the upper classes were dismissed and the buses began to arrive on a street adjacent to the school grounds to take the out-of-town pupils home. After the upper classes were dismissed and the buses began to arrive the two older pupils who were supervising plaintiff and his companions went on their own business, and for a short period of time there was no supervision provided. This procedure was the regular routine custom adopted by the school, and no teacher, or other adult, was provided to supervise the waiting period of play.
On the day in question, when the upper classes were dismissed and the buses began to arrive, the two older pupils left plaintiff and his companions. While waiting for the bus, and when still on the school lawn near a sidewalk, plaintiff became engaged in a scuffle with another boy who pushed him toward the ground. As he was falling he was struck by a bicycle ridden by an older boy. As a result of this collision he sustained a fracture of the left temporal bone of the skull, and pieces of the bone were driven inward through the dura and into the brain itself. Probably this was caused by a projection on the axle of the front wheel on the bicycle which collided with him.
Some forty or fifty town students used bicycles to ride to and from school. Some of the bicycles were left in a bicycle rack when not in use, and others were left standing along the front entrance of one of the school buildings. There were no rules or regulations prescribed by the hoard of education concerning the operation of bicycles on the school grounds, and the principal had made none. Bicycles were ridden at times over the playground and on the lawn where the smaller children waited for their buses. On several occasions children had been struck.
The trial court submitted to the jury the issue of whether the defendant board of education was negligent in failing to adopt rules and regulations for the safety of younger pupils *266 while they were still on the school grounds awaiting transportation, particularly with reference to bicycle riders; and, in the absence of such rules and regulations, the issue of whether the supervising principal was negligent in failing to maintain proper discipline and adequate supervision for such younger pupils. The jury was also charged that it was the duty of the board of education to exercise reasonable care in looking to the safety and well being of plaintiff from the time he was transported in a district bus from home until he was returned.
At the close of the entire case no motion was made in behalf of the defendants for a dismissal of the complaint or for a directed verdict. This amounted to a concession that there was evidence which justified a submission of the case to a jury, and under such circumstances we may not dismiss the complaint as a matter of law (Eno v. Klein, 236 N. Y. 543; Wulkan v. Kapp, 264 App. Div. 743). But irrespective of this rule we think plaintiff made a fair case for the jury.
The board of education of a central school district has the same powers and duties as a board of education in a union free school district (Education Law, § 1804). Section 1709 of the same statute provides:
“ The said board of education of every union free school district shall have power, and it shall be its duty: * * *
“2. To establish such rules and regulations concerning the order and discipline of the schools, in the several departments thereof, as they may deem necessary to secure the best educational results.
“ 16. To * * * employ such persons as may be necessary to supervise * * * playground * * * activities * * * ”.
These sections have been construed as mandatory and not merely permissive (Garber v. Central School District No. 1, 251 App. Div. 214; Miller v. Board of Education, 291 N. Y. 25, 31). In the Miller case it was said: “ If the Board had given the required supervision so that a teacher or teachers were among the children, the dangerous condition of the school property insofar as it affected the pupils so protected by supervision might well have ceased to exist. The statutory duty must be interpreted in accord with the intention of the Legislature which was clearly that the Board of Education should supervise a playground on school property during school hours and provide a proper place to play for school children when it was necessary for them to go out upon school property during school hours.”
*267 This language with only a slight alteration may well he applied to the present case. There was no proof in the present case of a dangerous, condition of the school property hut the jury might find that unrestricted bicycle riding on that part of the grounds where small pupils congregated created a dangerous situation. It is practically conceded that neither the board nor the principal made any rules or regulations relative thereto. In the absence of such rules and regulations the jury might also find that the supervision provided was entirely inadequate. Whether the failure of the defendants in these respects was a proximate cause of the accident is an issue over which reasonable minds might differ, and hence an issue of fact arose which was for the jury to resolve. So far as the issue of notice is concerned it was for the jury to say whether defendants in the light of all the circumstances should have known that a situation of some danger existed. Thus, we think, the issues relative to negligence were properly submitted to the jury.
On the trial the only medical testimony produced for the infant plaintiff was that given by a physician who was not licensed to practice medicine in the State of New York. He was, however, connected with the Montreal Neurological Institute and had assisted the physician there in charge in the treatment of plaintiff. Moreover he was a graduate of McGill Medical School and held the degrees of doctor of medicine and master of surgery. His competency to testify as an expert was within the discretion of the trial court (People v. Rice, 159 N. Y. 400). His qualifications were gone into at some length by both counsel and the trial court. Of course the weight to be given to his testimony was for the jury.
Complaint is made that he was permitted to give a speculative opinion as to future results in the following respect:
“ Q. Are you able to state with reasonable certainty, Doctor, from having treated the plaintiff, as you have testified, what the effects of this injury will be, in the future, if any?
“ Mr. Tierney: I object to that as incompetent. It is too general, and irrelevant.
“ The Court: It is pretty general. I will overrule the objection.
“ Mr. Tierney: Exception.
“ The Court: He may answer.
“ A. The patient may develop epilepsy because of his injury. ”
Counsel for the defendants made no motion to strike out the answer. Subsequently the witness was interrogated concerning *268 the possibility of epilepsy, and he made it quite clear that no one could make such a prognosis with accuracy. He was testifying from percentage cases. He did say the possibility existed because of the scar which involved brain tissue, and also because there was some atrophy of the brain. Later in the record counsel for the defendants objected to the witness’ testifying as to plaintiff’s prospects of getting epilepsy in the future, but thereafter he withdrew his objection. When the case was submitted to the jury no objection was taken as to the charge relative to injuries, nor was any request made by counsel for the defendants in connection therewith. In view of this state of the record we do not think that reversible error is presented. Nor can we say in view of the nature of the injury and the treatment in connection therewith that the verdict is excessive.
The order and judgment should be affirmed, with costs.
Heffernan, Brewster, Santry and Bergan, JJ„ concur.
Order and judgment affirmed, with costs.