RUTH SCHWARTZ, Respondent, *v.* MADISON SQUARE GARDEN
CORPORATION, Appellant.

First Department, March 2, 1954.

*Benjamin H. Siff* of counsel (*Barnet S. Blume,* attorney), for respondent.

*Patrick E. Gibbons* of counsel (*John G. Donovan* with him on the brief; *Galli & Locker,* attorneys), for appellant.

*Per Curiam.* Plaintiff fell and was injured in descending a stairway from the balcony of Madison Square Garden and has recovered a judgment against defendant. She had attended a matinee performance of a rodeo show with her brother-in-law and two small nieces.

Plaintiff's brother-in-law testified that the Garden " seemed to be crowded to me " but there was no suggestion the balcony was excessively crowded and no proof that there were standees in the aisles or elsewhere.

The records of the defendant show that the balcony had a maximum capacity of 5,867 persons and that on the day plaintiff was there it had 761 under the maximum. There were twenty-two ushers in the balcony, four special policemen and four gatemen. There were four stairways leading from the balcony including the one used by plaintiff. Ramps from the balcony were not in service because they were used for animals in the performance. The ushers divided the balcony so that about one fourth of the crowd left by the stairway plaintiff used. The proof is not disputed that the crowd was orderly as it approached the stairway.

There were two guards stationed at the entrance to it, but no guards on the landings. The design of the stairway is not shown to be defective nor inadequate for its purpose. It had handrails on each side and a handrail in the middle. Plaintiff fell when she was on the last flight down. She said of the crowd that '' they were pushing I mean, couldn't go fast * * * I was holding on to the rail. And then they forced me off balance and the crowds just threw me ''.

Even taking this testimony literally there is merely the suggestion of pressure and not of rushing, i.e., '' they were pushing * * * couldn't go fast.'' Defendant would not be required to anticipate plaintiff's injury on this record and would not incur liability for the failure to anticipate it. No excessive crowding of the balcony has been shown or any disorderly or rapid movement of the crowd as it entered the stairway.

There were adequate guards on duty in the balcony and at the approach of the stairway. Defendant was not required to have guards at every landing and not unless the attention of its employees was called to some extraordinary situation was it required to stop the use of the stairway from the balcony. Plaintiff's own proof showed the crowd was moving into the stairway normally and in good order.

The case does not fall within those classes in which liability is incurred in the danger created by a surging crowd (*Davidson* v. *Radio City Music Hall Corp.*, 288 N. Y. 553), or by an area crowded '' beyond normal conditions '' (*Schubart* v. *Hotel Astor*, 281 N. Y. 597). The obligation of defendant is to provide '' an adequate degree of general superintendence '' (*Peterson* v. *City of New York*, 267 N. Y. 204). The case here is rather similar to the subway-stair fall considered in *Serlin* v. *City of New York* (291 N. Y. 595) and is governed by the same principle.

The judgment should be reversed and the complaint dismissed, with costs to appellant.

Dore, J. P., Callahan, Breitel, Botein and Bergan, JJ., concur.

Judgment unanimously reversed, with costs to the appellant and judgment is directed to be entered in favor of the appellant dismissing the complaint herein, with costs.