Miles F. McDonald, J.
Motion to set aside verdict in favor of the infant plaintiff Joseph Lopez in the sum of $15,000, and in favor of Genevieve Lopez in the sum of $2,500, granted and complaint dismissed.
The infant plaintiff was injured as a result of an accident which occurred on a public playground owned and controlled by the Department of Parks of the City of New York. The playground was located in the immediate vicinity of Public School 206, at Neck Road and East 26th Street in this county. The accident occurred during the luncheon recess from school on April 19, 1950, when the infant plaintiff was not quite 10 years of age. The plaintiffs attempt to impose liability upon the City of New York by establishing that the defendant was negligent in that (1) the swing area was improperly constructed, (2) that the same area was overcrowded and (3) that the supervision of the entire playground area was either improper or that it was entirely lacking. The facts so far as pertinent are as follows:
The plaintiff, then approximately 10 years of age, entered the playground at about 12:20 p.m. on the day in question. He went immediately to the area in which were located six swings for use of the children of a similar age, the area being described throughout the course of the trial as the swings for older children. This area, containing six swings, was approximately 26 feet by 43 feet, comprising 1118 square feet, and was fenced off from the rest of the playground area. Within this area there were at the time between 15 and 20 children maximum, according to the testimony of the plaintiff and the witnesses called in *605 his behalf. Shortly after entering the area the plaintiff secured a swing and occupied it until a small girl approximately seven years of age requested him to relinquish it for her use. According to the testimony of the plaintiff, he got down from the swing in such a way that the swing was in front of him, and the young-girl who sought the use of the swing was on the other side of it and immediately got on the swing. As he progressed to the rear, the small girl mounted the swing and stood upon it and started to “ pump ” or propel it by the action of her legs. The swing approached the plaintiff once, then reversed its course and once again returned in his direction, thus transversing the full arc less than twice. As the swing approached the plaintiff for the second time, he bumped into three or four children who impeded his progress, at which time he was struck in the face and severely injured. The plaintiff asserts that the impact occurred when he was approximately four inches from the fence which surrounded the area. This assertion is contrary to the physical facts, as the greatest arc the swing could have traversed would not bring it "within five feet of the fence at its nearest point. Nevertheless, it is clear that the plaintiff was injured by being struck with the swing and the plaintiff is in error as to his location at the time. The record is barren of any evidence concerning the length of time the children who impeded his progress were in that particular portion of the swing area, or in what pastime they were engaged or exactly where they were located. There is no evidence other than that offered by the plaintiff directly concerning the occurrence. The only other person present at the time was a child of similar age who testified only to the number of children in the swing area and the events which occurred subsequent to the accident.
Immediately after the accident plaintiff was taken to the field house, or supervisory headquarters, for first aid. At the time the plaintiff arrived the supervisor in charge of the playground was one Lee Kempner, whose position was that of an assistant gardener in the Park Department, and who was, according to the testimony offered by the plaintiff, eating her lunch although her luncheon period was not scheduled until 1:00 p.m. This is denied by the witness Kempner, but admittedly the supervisor was in the field house and, as she claims, was washing up to go to lunch. She had removed her blouse or upper garment, which indicated that she had been in the field house for some time and that during that period the playground had no other supervision. No evidence was submitted from which the jury could rightfully conclude that the swing area was improperly designed or constructed. There was ample clearance on all sides *606 and the nearest the swing could have approached the fence was five feet nine inches at highest point of the fence, and there was sufficient room for children to pass and repass while the swings were in the course of their greatest arc without interference.
With respect to the question of overcrowding, evidence is also lacking. The maximum number of children in the swing area, according to the plaintiff, was 20 children, allowing 50 or more square feet per child. The sole question therefore remains concerning the supervision afforded, or the lack thereof. It is quite clear that at the time of the accident the person in charge of the area was not actively engaged in supervision, either of the entire area of the playground or of the swing area. This in and of itself is not evidence of negligence on the part of the city, for the city is not required to furnish immediate supervision of each and every part of such play area (Peterson v. City of New York, 267 N. Y. 204). General supervision is all that is and should be required (Curcio v. City of New York, 275 N. Y. 20).
There is nothing in the nature of the swing area which would require constant and immediate supervision. Swings have been playthings of children from time immemorial. Almost every backyard contains such a device. The average parent, with all of their solicitude for their own children, rarely afford more than passing supervision. No greater duty can be imposed upon the City of New York.
“ Teachers have watched over the play of their pupils time out of mind. At recess periods, not less than in the class room, a teacher owes it to his charges to exercise such care of them as a parent of ordinary prudence would observe in comparable circumstances.” (Hoose v. Drumm, 281 N. Y. 54, 57-58.) Were greater supervision required, the benefits to be derived from such play area would necessarily be denied to the children of our community for the cost thereof would be prohibitive. Had the supervisor been in the performance of her duties in any other portion of the playground at the time of this occurrence it would have been impossible for her to have prevented the accident which occurred. It is doubtful if even immediate supervision by the most trained and skillful playground director could have afforded a different result, for the events which occurred all took place within the twinkling of an eye and unless the supervisor was within arm’s length of the plaintiff ready to snatch bim from the path of danger she would have been powerless to intervene.
‘ ‘ Te say, as in effect the jury were told, that direct management of the swing by an attendant would perhaps have pre *607 vented plaintiff’s injuries is to allow a verdict to be reached by a guess. But even if the jury were right in this instance, we think such a requirement of immediate official supervision would have been unreasonable in the circumstances, and that, therefore, there is no evidence of defendant’s negligence.” (Peterson v. City of New York, 267 N. Y. 204, 206, supra.) Had there been proof of overcrowding of the particular area, an alert supervisor might have required a number of the children, to leave this area, but such evidence is lacking. Evidence is entirely lacking that the children with whom the plaintiff is alleged to have collided were actually congregated at that particular place or had been there for any appreciable length of time, or were so engaged as to indicate that their presence created a condition of danger which could have been recognized. Unless there is a causal relationship between the lack of supervision and the resultant injury liability may not be imposed upon the city (Laub v. City of New York, 271 App. Div. 797; Frazier v. Young Men’s Christian Assn. of Little Falls, 286 App. Div. 464; Blume v. City of Newburgh, 265 App. Div. 965, affd. 291 N. Y. 739). No such relationship exists here.