Julio Gonzalez, an Infant, by His Guardian ad Litem, Petra Benjamin, et al., Appellants, *v.* Michael M. Mackler et al., Respondents.

First Department, July 9, 1963.

*Julian C. Tepper* of counsel (*Abraham Salm,* attorney), for appellants.

*George H. P. Dwight* of counsel (*Seymour B. Quel* with him on the brief; *Leo A. Larkin, Corporation Counsel,* attorney), for respondents.

McNALLY, J. In an action for personal injuries the infant plaintiff has been nonsuited presenting the question whether in any aspect the liability of the defendants involves issues of fact.

On April 20, 1959 plaintiff, about 15 years of age, a pupil and innocent bystander, was struck by a rubber-tipped wooden pointer thrown by a second pupil and intended for a third pupil and sustained extensive and permanent injuries to his left eye. The classroom was equipped with 8 to 10 desks each seating two pupils. The class, which included the infant plaintiff, was composed of mentally retarded children ranging from about 14½ to 16 years.

Defendant Michael M. Mackler, who was licensed to teach mentally retarded children, was the teacher in charge. He taught the class all subjects and in that regard the method of teaching this class differed from that applicable to regular classes. On the day of the occurrence Mackler absented himself from the classroom for about one-half hour to attend to other

school duties. He did not appoint a monitor from one of the class; apparently he informed the teacher of the adjoining classroom of his departure. No one was in charge of the class during Mackler's absence. In the interval an altercation occurred between two pupils, a boy seated with the infant plaintiff and a girl. The verbal portion of the altercation lasted about 10 minutes, at the end of which the girl seized the pointer and threw it in the direction of her opponent, striking instead the infant plaintiff.

The nonsuit entitled plaintiff to the most favorable inferences flowing from the evidence adduced. (*Rivera* v. *Board of Educ.*, 11 A D 2d 7.) Whether the occurrence was proximately related to the absence of Mackler and the omission to supply supervision in the interval involves issues of fact. (*Lopez* v. *City of New York*, 4 A D 2d 48, 52, affd. 4 N Y 2d 738.) The jury would have been enabled to find that if supervision had been supplied the verbal exchange would not have occurred and in any event would have been suppressed before it culminated in violence. (Cf. *Curcio* v. *City of New York*, 275 N. Y. 20, 24.) Distinguishable and inapplicable are cases involving unforeseeable, spontaneous and instantaneous acts of violence. (*Ohman* v. *Board of Educ.*, 300 N. Y. 306; *Blume* v. *City of Newburgh*, 291 N. Y. 739; *Peterson* v. *City of New York*, 267 N. Y. 204; *Wilber* v. *City of Binghamton*, 271 App. Div. 402, affd. 296 N. Y. 950; *Chmela* v. *Board of Educ.*, 17 A D 2d 826; *Coulter* v. *Roman Catholic Church of St. Ignatius*, 16 A D 2d 653.)

Defendants' duty to supervise the class including the infant plaintiff cannot be gainsaid. (*Lopez* v. *City of New York, supra.*) It may well be that Mackler's many duties prevented him personally from supplying the required general supervision during the interval of his absence. That is a relevant factor on the scope of his duty in that regard but does not affect the duty of the defendant Board of Education of the City of New York to furnish adequate general supervision. (*Germond* v. *Board of Educ.*, 10 A D 2d 139.) Relevant also is Mackler's omission to appoint one of the class to supervise during his absence. Moreover, on the duty of general supervision, the jury was entitled to consider the composition of the class. Here involved were adolescent, mentally retarded children who, although not delinquent or incorrigible, the jury could have found did not have as good judgment, discrimination and control as other adolescent children of the same age.

The judgment dismissing the complaint should be reversed, on the law and on the facts, and a new trial directed, with costs to abide the event.

BREITEL, J. P. (dissenting). The court is holding that a prima facie case of negligence is made out when an elementary school teacher leaves the class for a period, variously estimated as 20 minutes to one-half hour, for official purposes, without leaving another in physical charge, and one of the students assaults another. This goes much further than any of the cases, or the principles upon which they rest. Moreover, this defies the ordinary parental or school standards which apply to children in the teen-age range. Not to be confused are the situations where youngsters are engaged (while at school) in play, recreation, or assembly, under circumstances where high-spirited physical activity and physical interchanges among them are likely or are intended to occur (e.g., *Lopez* v. *City of New York,* 4 A D 2d 48, affd. 4 N Y 2d 738; *Rivera* v. *Board of Educ.,* 11 A D 2d 7; cf. *De Marco* v. *City of Albany,* 17 A D 2d 250).

The *De Marco* case, although it involved a playground in a public park, turns on the correct principles involved. There teen-age boys inflicted injury upon a little girl who was using a swing. Teen-agers had been responsible for acts of rowdyism, often interfering with the use of the swings. The court, in discussing the significant cases in the area, stated as follows (pp. 252–253):

" The present case does not present a criminal situation but the jury could have found there was a dangerous situation if adequate supervision was not afforded and that the resulting accident was foreseeable.

" The court stated in *Lopez* v. *City of New York* (4 A D 2d 48, 51, affd. 4 N Y 2d 738) that ' The duty " to protect children of tender years and experience, at least from its own negligence " rested upon the respondent (*Van Dyke* v. *City of Utica,* 203 App. Div. 26, 29), particularly when charged with knowledge, to be derived from its own departmental regulation as in the case at bar, that some sport conducted on its playgrounds might cause injury (*Lane* v. *City of Buffalo,* 232 App. Div. 334).'

" In the instant case, the jury could find knowledge of the danger presented by teen-age children at this particular swing area, and that the supervisor had ordered constant supervision of the area.

" The case of *Ohman* v. *Board of Educ. of City of N. Y.* (300 N. Y. 306) is *not* authority for holding that every time a third person is involved there can be no liability on the part of the governmental subdivisions. Rather, the *Ohman* case, stands for the proposition that had the teacher been there, such a spontaneous act could not have been prevented. The point in the

instant case is that proper supervision of the area would have resulted in the boisterous teen-agers either being expelled from the area or made to simply sit in the swings. In other words, the jury could find that proper supervision would have resulted in no injury.'' (Emphasis in original.)

If there were any circumstances in connection with a classroom or its children, as, for instance, any history of boisterousness or rowdyism, which would make foreseeable that personal hazard would arise if the teacher left the room a case would be made out. In this case there is none of this.

The incident in this case arose when a girl student had a quarrel with a boy student. She suddenly went to the blackboard, took the pointer and, in casting it, injured the infant plaintiff. All of this occurred within 10 minutes, after the teacher had left the room.

The class consisted of mentally retarded children but the record makes unequivocal that these were not children who were mentally disturbed. So far as the record is concerned these were orderly children who behaved like other children of their own age, ranging from 14½ to 16 years. Their deficiency was intellectual and not emotional. The teacher testified that he had handled such special classes over a period of 11 years and that when he left the classroom for any official purposes he notified the teacher in the adjoining room. He admitted that sometimes upon returning to the class he would find bits of paper and chalk around the floor but he emphasized that nothing more serious had ever occurred.

On this record, therefore, to permit a jury to fix liability without other evidence to indicate a likelihood of serious disorder or any personal hazard arising if the teacher left the room unattended is not justified. While teen-age school children are capable of free spirits, they are not hellions who require close custody on pain of disaster to one of them. Typically, in cases where recovery has been allowed for classroom incidents, or near-classroom incidents, there has been evidence bringing home to the teacher or to the school board that conditions existed which would produce such disorder or hazard (e.g., *Aronoff* v. *Board of Educ.*, 13 A D 2d 679, affd. 10 N Y 2d 828; *Wiener* v. *Board of Educ.*, 277 App. Div. 934; see *Bertola* v. *Board of Educ.*, 1 A D 2d 973; cf. *Peterson* v. *City of N. Y.*, 267 N. Y. 204; Restatement, Torts, § 320, especially *comment* d.).

Accordingly, I dissent and vote to affirm the judgment dismissing the complaint.

EAGER and BASTOW, JJ., concur with MCNALLY, J.; RABIN, J., concurs in result; BREITEL, J. P., dissents in opinion.

Judgment dismissing the complaint reversed, on the law and on the facts, and a new trial directed, with costs to abide the event.