Fuchsberg, J. (concurring).
On a day in June after school hours in 1968, seven-year-old Brian Nicholson went into the schoolyard at P.S. 94 in Brooklyn at 4:30 p.m. and sat down in a corner. Ten other children, each about 12 years of age, were present. Brian heard his name called. When he turned around he was hit in the left eye by a firecracker. After several successive operations, the eye was removed and an artificial one fitted.
Brian was not a student of P.S. 94 nor of any formal afterschool program conducted by it. The schoolyard was not run as an. official, supervised area for afterschool play and no school personnel were assigned to be present to supervise play or for any other purpose. However, young children in the neighborhood, a congested tenement house area, had for years been in the habit of congregating there after school hours. The yard adjoined the public sidewalk, from which it was separated by a high metal fence, but whose gates had been missing for years. The nearest public park providing play facilities, Sunset Park, was seven blocks away. The school playground was across the street from where Brian lived. Softball was a popular game there, but that was not all.
The record is replete with testimony of constant warnings to *801 "the principal of P.S. 94 and the board of education that firecrackers were being exploded in the yard frequently during at least 1967 and 1968 and that papers would be set on fire and bottles and garbage thrown. There had been acute episodes of such conduct during April and May, the two months preceding the injury here. Members of the "Block Association” had met with the principal to request that either gates be installed to close the schoolyard or that supervision be provided. Neither was forthcoming.
Defendant, arguing (1) that because the locus of the accident was a schoolyard instead of a park and that, therefore, it owed no duty to plaintiff except to refrain from active negligence, and (2) that, in any event, it had no obligation other than to maintain the yard in its admittedly good physical condition, sought dismissal. The Trial Judge ruled otherwise, the jury found for the plaintiff and the Appellate Division, upon the filing of a stipulation consenting to a reduction of the verdict, affirmed, with one justice dissenting. We hold that plaintiff made out a case.
The liability in this case can not turn on the simplistic issue of whether the locus of the accident was park or schoolyard, playground or beach. Our concern must rather be with the facts and circumstances bearing on safety, foreseeability, proximate cause and other legal and behavioral factors that enter into the concept of negligence.
Here, looking at the proof most favorably for the plaintiff, as we must in view of the affirmed jury verdict, we find the long and continued use of the yard as the only neighborhood Mecca for off-street play by children, the repeated dangerous activity taking place there, and defendant’s actual knowledge, as a result of most persistent and insistent protests, of what was going on. Indeed, defendant in its brief, goes further. It concedes that the yard was kept open for the very purpose of providing a play area for children in the crowded area where it was located. Under these circumstances, whether the schoolyard had become a playground would appear to be a matter of semantics. (See Cappel v Board of Educ., Union Free School Dist. No. 4, 40 AD2d 848 [neighborhood child welcome to play on fields when school not in session injured when other children tilted a field hockey goal cage]; cf. Jacques v Village of Lake Placid, 39 AD2d 163.)
We regard the case of Caldwell v Village of Is. Park (304 NY 268), which reversed a dismissal by the Appellate Divi *802 sion, as directly in point. There an infant plaintiff was injured when, as in this case, he was struck by fireworks. The accident occurred at a beach area, part of a larger recreation facility known as Island Park Beach, at about 8:30 p.m., on July 4. After 6:00 p.m. there were no admission fees and the gates, also as here, were left open for access by those wishing to enter. Further, despite the expectation of visitors in the evening, again as here, the defendant there assigned no employees to the area, dispensing with the use of its lifeguards and youth recreation director after fee-admission hours.
Caldwell makes two things very clear for our case. The first is that in the factual framework presented here, the defendant was required to do more than merely maintain the static, physical aspects of the yard in safe condition. The on-going dynamic activity of repeated fireworks shooting had to equally become its concern. The second was that, because defendant had not undertaken supervision in the narrow sense of the immediate direction of a formal play activity program, it was not relieved of an obligation to take steps of a broader and more general nature to stop or prevent the dangerous áctivity of which it had been so thoroughly informed. As Chief Judge Conway put it in words written as though for the present case,
"The duty goes beyond the mere maintenance of the physical condition of the park. Although it has been held that strict or immediate supervision need not be provided, the municipality may be obliged to furnish an adequate degree of general supervision. (See Fritz v City of Buffalo, 277 NY 710; Curcio v City of New York, 275 NY 20, 24; Peterson v City of New York 267 NY 204, 206.) That duty of supervision may require the regulation or prevention of such activities of park visitors as endanger others utilizing the park.
* * *
"Furthermore, where activities pregnant with danger are engaged in with the frequency we find here, it may justifiably be said that the condition of the village park was unsafe.” (Caldwell, supra, pp 273, 276.)
Accordingly, the resolution of liability did not depend in this case on classification according to traditional concepts of "active” versus "passive” conduct on the part of the defendant, or of "licensee” versus "invitee” status on the part of the plaintiff. Such distinctions no longer are applied with the universality and undiminished force they once enjoyed. (Cf. *803 Martinez v Kaufman-Kane Realty Co., 34 NY2d 819.) The defendant was required to do what a reasonable person would do under the circumstances for the safety of those whom it had reason to expect to be on its premises, the identity, age and other details with regard to such persons being among those circumstances.
Finally, that the firecrackers were brought on to the schoolyard by other children goes only to the foreseeability of the occurrence and the standard of due care to avoid the injury. It is not an essential link in the chain of liability that defendant itself propelled the firecracker that struck the child.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Cooke concur in Per Curiam opinion; Judge Fuchsberg concurs in a separate opinion in which Judge Wachtler also concurs.
Judgment affirmed.