■ KEVIN O'BRIEN, Appellant, v MIDTOWN SKATING CLUB OF NEW YORK, INC., et al., Respondents.—Judgment of the Supreme Court, New York County, entered January 23, 1980, dismissing plaintiff's complaint affirmed, without costs. On April 4, 1976 plaintiff and his brother attended a skating rink operated by defendants. At or about 4:15 P.M. the rink was cleared in order to resurface the ice. This was done through the use of a Zamboni machine which shaved the ice to eliminate ruts and cracks. Approximately two or three minutes later the rink was reopened to the public. After the rink was reopened, plaintiff's brother skated away. Plaintiff endeavored to follow. After he had skated some 30 feet he slipped and fell, injuring himself. It is his contention that some water was present on the ice and that this made the ice unduly slippery, causing him to fall. At the close of the plaintiff's case, the trial court indicated some doubt as to whether the plaintiff had established a prima facie case. However, decision was reserved. At the close of the entire case, the matter was sent to the jury. After the jury returned its verdict, the verdict was set aside and this appeal followed. We think that this case is controlled by *Cohen v Union News Co.* (282 App Div 1013, affd 307 NY 628). There, under circumstances quite similar to those here presented, we held that "the plaintiff failed to establish against defendant any actionable negligence proximately causing the accident and the injuries". The Court of Appeals affirmed by a vote of 5 to 2. Indeed, if anything, *Cohen* represented a stronger basis for recovery, for, as the Court of Appeals dissent indicates, there was evidence which justified the conclusion that the ice had not been planed or prepared properly, thus contributing to a groove or hole in the ice as a result of which the plaintiff in that case fell. No such condition was here shown to exist. Concur—Birns, Markewich and Bloom, JJ.

Kupferman, J. P., and Fein, J., dissent in a memorandum by Fein, J., as follows: Plaintiff fell and broke his arm while ice skating at defendant's ice skating rink. The jury's verdict, by a 5 to 1 vote, finding defendant 100% liable and awarding plaintiff damages in the sum of $25,000, was set aside by the Trial Judge on defendant's motion, and judgment was granted dismissing the complaint. In my view the jury's verdict should be reinstated and judgment entered thereon. The 23-year-old plaintiff and his younger brother were ice skating continuously and without incident for an hour and a quarter at defendant's indoor Manhattan skating rink on a Sunday afternoon in April, 1976. They sat out the intermission, during which time the ice was planed and resurfaced by a "Zamboni" machine. The machine shaves the surface of the ice, picks up the snow, planes the surface smooth and releases water onto the ice. A long towel then drags across the ice spreading a film of water across the ice to make it smooth again. The purpose is to provide a smooth skating surface. Within two or three minutes after the Zamboni left the ice, the announcement was made that the rink was again open for skating. No inspection of the ice was made. The Zamboni

is operated by defendant on a time basis and is not followed by an inspection. The two or three minutes delay after the Zamboni is finished is to afford the film of water time to harden into smooth ice. After a new surface of water has been laid down, this film requires some period of time before it hardens into ice. Defendant's general manager testified this was the reason for holding the skaters off the ice for the two- or three-minute interval after the Zamboni departed. Plaintiff entered the rink just after his brother, skated about 30 feet, then slipped and fell backwards, fracturing his left arm. Plaintiff testified that the ice was slippery and soft, and that there were puddles of water on the surface, as compared with the smooth and firm surface prior to intermission. Plaintiff's brother, an above-average skater, also testified that he had found the surface very wet, slick and soft when he preceded plaintiff onto the ice. He did not see his brother fall. Plaintiff's coat, skates and hand were wet from the surface puddles after the fall. The simple questions properly before the jury were whether defendant had negligently reopened the rink for skating before allowing a reasonable lapse of time for the new surface to freeze, and whether fall had been caused by the soft ice, water and the puddling. There was no reason why Trial Term should have taken these clear questions of fact away from the jury. Defendant's case in large part depended upon the response by defendant's manager to the question: "Is there ever a check made to determine the amount, whether the amount of water left on the ice is excessive before the rink is reopened?" ANSWER "The amount of water put on it couldn't be excessive because there isn't enough in the tank to put an excessive amount on the ice." Defendant's contention is that the Zamboni operation left no soft ice or excessive water on the surface. The jury evidently rejected that explanation. There was obviously enough water on the surface to require some period for hardening. Defendant's general manager so conceded. The questions of excessive water, soft ice and the length of time required to have the ice reasonably prepared for resumption of skating, were plainly for the jury. A participant in a sporting event or athletic activity generally assumes the risks inherent in the sport and in any open and obvious condition of the place where it is carried on (Curcio v City of New York, 275 NY 20; Diderou v Pinecrest Dunes, 34 AD2d 672). However the operator of the facility in which the sporting or athletic activity proceeds owes a duty of care to such participants not to enhance the inherent risks (Hornstein v State of New York, 30 AD2d 1012). The standard of care required of one who operates such a facility is to maintain it in a reasonably safe condition for the use for which it is intended and held out. Defendant's general manager testified that the very function of the Zamboni machine was to provide a hard, smooth and frozen surface without excess water on the surface. The issue thus was one of fact whether the surface was frozen hard and smooth without excess water as contended by defendant, or whether it contained soft spots and accumulations of water as claimed by plaintiff, and if so, whether such soft spots and water were a proximate cause of the accident. The evidence was sufficient to raise a factual issue for jury resolution. In setting aside the jury verdict for plaintiff the Trial Justice ruled there was no actionable negligence. In my view, he incorrectly concluded that as a matter of law there is no duty on the part of an ice skating rink operator to maintain the surface of the ice reasonably free of soft areas and accumulations of surface water. The Trial Justice relied for his ruling on Cohen v Union News Co. (307 NY 628). However, that case is distinguishable. This court's memorandum stated only that there was no actionable negligence (Cohen v Union News Co., 282 App Div 1013). The Court of Appeals

affirmed, without opinion. However one can glean from the syllabus and the dissent in the Court of Appeals that as plaintiff entered the rink he found the ice "rough with a little water over the top. As he was leaving the ice for a rest, the blade of his right skate caught in a groove or hole under the film of water, and he was caused to fall." *(Cohen v Union News Co.,* 307 NY 628, 629, *supra)*. There was testimony that some time previously the ice had been sprayed, squeegeed, sprayed again and frozen. How much prior to the time plaintiff entered the ice and before he started "leaving the ice for a rest" does not appear. Defendant contended that there was no proof how long the groove existed and no proof that defendant knew or was notified of its existence. The issue was one of notice. Our case is different. Defendant signaled the ice was ready for use after the completion of the Zamboni operation for resurfacing and refreezing. Defendant breached an affirmative duty when it invited the skaters onto the ice. In view of the jury's verdict the court must take the facts in a light most favorable to the plaintiff, and in determining whether the facts proved constitute a cause of action, give the plaintiff the benefit of every favorable inference which may reasonably be drawn *(Osipoff v City of New York,* 286 NY 422, 425; *Sadowski v Long Is. R. R. Co.,* 292 NY 448, 454, 455). The plaintiff was not required to offer evidence which positively excluded every other cause of the accident *(Rosenberg v Schwartz,* 260 NY 162, 166; *Martin v Herzog,* 228 NY 164). The evidence was sufficient for a finding that defendant knew or should have known of the existence of the soft spots and water and the danger they presented. A jury has so found in determining defendant was negligent. Its verdict should not have been set aside. The order, Supreme Court, New York County, entered October 3, 1977, and the judgment entered thereon on January 23, 1979, should be reversed, with costs, the verdict reinstated, and judgment entered thereon.