MARGARET McEVOY, Respondent, *v.* CITY OF NEW YORK, Appellant.

Second Department, June 30, 1943.

*Samuel A. Bloom* (*Robert H. Schaffer, Acting Corporation Counsel; Paxton Blair* and *Alfred T. Macre* with him on the brief), for appellant.

*Louis Baron* and *Henry Klauber* for respondent.

CLOSE, P. J. The plaintiff occupied as tenant a one-family house which fronted upon a sidewalk in the borough of Richmond. A hole which existed in the sidewalk in front of plaintiff's house became, during the period of her occupancy, so enlarged and of such character that it occasioned the fall of the plaintiff upon the sidewalk and caused the personal injuries for which a jury has awarded her damages in the amount of $2,000.

The defendant City appeals and urges that the plaintiff may not recover because of her failure to keep the sidewalk in repair in obedience to the mandate of the Administrative Code of the City of New York, with the result that she became a participant in the risk of harm either by assuming the risk or by the intervention of contributory negligence; and finally, that the verdict in her favor is against the weight of the credible evidence.

The pertinent sections of the Administrative Code (L. 1937, ch. 929, § 82d1-4.0 and § 82d1-5.0, subds. a, b, and c) provide generally that all streets of twenty-two feet in width and upward shall have sidewalks on either side thereof, the width, materials and construction of which shall fully conform to standard specifications for such work to be prescribed by the borough president having jurisdiction. It is also provided that the owner, lessee or occupant of any house or building or vacant lot abutting on any street shall, at his or their own expense, pave, maintain and keep in good repair the sidewalks, curb and gutter of the street in front of such abutting property. It is further provided that upon complaint being made to the borough president of any curb, gutter or sidewalk not paved or repaired, he may cause a notice to be served upon the owner, lessee or occupant to repair or relay the same, as the case may require, and, if upon service of such notice the said owner, lessee or occupant shall fail to comply with the notice, the City is authorized and required to make such repairs, and upon his certification the Board of Assessors shall make an assessment of such expense upon the property benefited thereby.

In our opinion the verdict in plaintiff's favor was not against the weight of the credible evidence and the trial court properly denied the defendant's motion to dismiss the complaint and

also its motion for a directed verdict. Passing for the moment the question as to the effect of the omission by the plaintiff to perform the duty imposed by the Administrative Code to keep the sidewalk in repair, and considering only whether the evidence conclusively demonstrated, as a matter of law, the presence of all the elements constituting the defense of assumption of risk, we may note first that the case was not tried by the defendant upon the theory that the plaintiff accepted the risk of harm, thus negativing any duty which might otherwise have been owed to her by the defendant. The case was tried on the theory that the defendant was *not negligent for the reason that the sidewalk was in good repair, or, if a defect existed in the sidewalk, that the plaintiff's negligence or lack of care in the manner in which she used the sidewalk contributed to the injury. The doctrine of assumption of risk lies in the maxim, *volenti non fit injuria*. Based as it is upon the plaintiff's assent to endure a situation created by the negligence of the defendant, it relieves the defendant from performing a duty which might otherwise be owed to the plaintiff. Where the plaintiff has assumed the risk of harm through the acts or omissions of the defendant, it matters not that the plaintiff was free from contributory negligence. In such case no breach of duty by the defendant is shown and consequently no negligence. Although often confused, the defenses of assumption of risk and contributory negligence are entirely distinct. The first denies the negligence of the defendant absolutely, while the second admits the negligence but denies the proximate cause. One of the reasons for confounding the two defenses is stated by Charles Warren in *Volenti Non Fit Injuria* in Actions of Negligence (8 Harvard Law Review, pp. 457, 459), as follows: '' This confusion arises from the fact that in many States contributory negligence is not treated as a defence, but rather as a bar to the plaintiff's case, which he himself must remove before being able to maintain his action. Treating the defence in this way naturally breaks down the line between contributory negligence and *Volenti non fit*.'' Another ground for the confusion exists in the '' borderland '' spoken of by CARDOZO, Ch. J., '' where the concept of contributory negligence merges almost imperceptibly into that of acceptance of a risk.'' (*McFarlane* v. *City of Niagara Falls*, 247 N. Y. 340, 349.) The voluntary acceptance of a risk may at times itself constitute contributory negligence. Again, a plaintiff having voluntarily entered upon a risk may fail to conduct himself with due care. In such cases it is sometimes difficult to perceive the distinc-

tion between the two defenses. "In strictness, however, to make out acceptance of the risk there must be foresight of the consequences." (*McFarlane* v. *City of Niagara Falls, supra.*) While contributory negligence may consist of the manner in which an act is performed, assumption of risk is never dependent upon the manner of performing an act but rather consists in the actual doing of the deed with foresight of the consequences. The essential requisite to the invocation of the application of the doctrine of assumption of risk embraces not only a knowledge of the physical defect but includes also an appreciation of the danger produced by the physical condition. (Harper on Torts, § 130; *Larson* v. *Nassau Electric R. R. Co.*, 223 N. Y. 14; *Osborne* v. *London and North Western Ry. Co.*, 21 Q. B. D. 220.)

It is admitted that for some time prior to the accident the plaintiff had knowledge of the defect in the sidewalk. She testified that the hole existed in the sidewalk when she moved into the premises some months prior to the accident and that it became worse during the period of her occupancy. However, probably because of the fact that the defendant did not try the case on the theory of assumption of risk, there is little or no direct evidence as to whether the plaintiff appreciated the dangers produced by the physical condition of the sidewalk, and what slight evidence there is in the record makes the question of assumption of risk one of fact and not one of law. (*Larson* v. *Nassau Electric R. R. Co., supra; Smith* v. *Baker & Sons* [1891] App. Cas. 325 [H. of L.].) Here there is no direct evidence that at the time the plaintiff entered upon the risk, i. e., when she stepped on the sidewalk on the morning of the accident, she had foresight of the consequences sufficient to support a finding that she voluntarily assented to incur the risk. All of the evidence as to her knowledge of the defect and as to her appreciation of the dangers that might ensue, relates to a period prior to the time when she actually entered upon the risk; and although the jury might have found that she fully appreciated the extent of the risk at the time she entered upon the same, since that inference is neither conclusive nor irresistible, it cannot be held as a matter of law that she assumed the risk of her injury.

Nor did the plaintiff assume the risk as a matter of law because of her omission to obey the mandate of section 82d1-5.0 of the Administrative Code. Even if it be assumed that such section places a duty upon an owner or occupant of real property to keep the sidewalk in repair for the benefit of the public

at large so that the public or those members of the public who may walk upon the sidewalk may be preserved in the safety of their persons, it is difficult to understand how such duty or its violation can be evidence of the elements which constitute assumption of risk. While it might be contended that the duty to repair the sidewalk imposed by the Administrative Code included also the duty to inspect the sidewalk, thus charging the plaintiff with knowledge of the defective condition of the sidewalk, neither the statutory duty nor its violation can be evidence of the fact that the plaintiff appreciated the dangers inherent in the physical condition of the sidewalk; and without a full knowledge not only of the physical defect but also of the dangers arising therefrom, the plaintiff cannot be said to have assumed the risk.

The defendant contends further that the plaintiff's omission to perform the duty imposed by the Administrative Code to keep the sidewalk in repair constituted *prima facie* evidence of negligence on her part. It is admitted by defendant that the breach of that section of the Administrative Code would not subject the plaintiff to civil damages in excess of subjecting the property to the cost of repairs. Nevertheless, it contends that by virtue of the Administrative Code a statutory privity between the plaintiff and the City was created for the benefit of the public at large. This contention may not be upheld. It is not the breach of every statutory duty that constitutes negligence. It is only the breach of those statutes by which the Legislature has intended to establish a standard of due care for the benefit of the public as well as for the benefit of the person violating it. At common law, whether or not a party has exercised due care is almost always a question of fact. However, when the Legislature takes unto itself the judicial determination that certain actions, if performed when prohibited, or if omitted when required, represent a breach of the standard of care thus established, the breach of such a statute becomes at least some evidence of negligence. In the present case it is, therefore, necessary to determine the intention of the Legislature in the adoption of the pertinent sections of the Administrative Code. If the Legislature intended by such provisions to impose upon the owners or occupants of abutting lands a standard of care or a new duty in relation to the safety of the public, then there would be no question but that the plaintiff's breach of the Administrative Code would constitute *prima facie* evidence of lack of care. (*Martin* v. *Herzog*, 228 N. Y. 164.) But such a construction may not be placed upon

the language used in the Administrative Code. (*City of Rochester* v. *Campbell*, 123 N. Y. 405.) The duty imposed on the owners, lessees or occupants of real property by the Administrative Code was for the benefit of the public generally only insofar as it relieved such owners, lessees or occupants of the financial responsibility of maintaining the sidewalks in good repair. It was not designed to preserve the public in the safety of their persons. The statute created merely a fiscal duty to the municipality and did not establish for owners or occupants of real property a standard of care of the same social or moral level which defendant's acceptance of its charter imposed upon it. The plaintiff's failure to keep the sidewalk in repair was not a tortious omission, as was defendant's breach of a similar duty.

The defendant concedes that the plaintiff, because of her failure to obey the mandate of the Administrative Code, is not subject to liability for personal injuries to the public. This concession makes it certain that the Legislature did not intend to set up a standard of care on the part of property owners by the enactment of the relevant sections of the Administrative Code. If the failure to repair is not negligence insofar as the public is concerned, it may not be deemed negligence insofar as the plaintiff herself is concerned. To state it in another way, the defendant contends that the breach of the statute not intended to establish a standard of care insofar as the public is concerned must be held to constitute contributory negligence on the part of the plaintiff. This cannot be so. The same rules which measure the plaintiff's negligence by virtue of a breach of a statutory duty are applicable to determine whether or not she is guilty of contributory negligence as a matter of law.

It is doubtful that the statute in question actually casts an affirmative duty on the plaintiff to keep the sidewalk in repair. A careful reading of its provisions discloses that its purpose is to create a permissive or optional duty, i. e., a duty which the occupants are free to assume or ignore. Section 82 of the New York City Charter vests in the borough president the "cognizance and control" of the City streets, including the grading, curbing, paving, resurfacing and repair thereof. It would seem that the purpose of the statute in question here is to minimize the cost insofar as the City at large is concerned. If the abutting owner or occupant fails to do the work, the borough president is "authorized and required" to do it and the expense is assessed against the abutting property. It would seem to follow that while the City delegates the duty to the

owner or occupant, it is in the nature of a permissive duty or privilege which he may exercise only in accordance with the rules and regulations of the borough president. If he fails to exercise the duty, the municipality proceeds to perform its own obligation and assesses the cost against the abutting property, and the fact that the occupant here elected not to do the work herself in no way affects the City's obligation to keep its sidewalks in a reasonably safe condition. (*City of Rochester v. Campbell, supra.*)

The position of the lot owner in doing the work himself has been likened to the position of a taxpayer making payment of taxes. If he refuses to do the work, it is analagous to the failure of a taxpayer to pay his taxes in the manner which the city may lawfully require (*City of Keokuk v. Independent District of Keokuk,* 53 Iowa, 352), and for refusal to pay taxes he incurs only the penalties prescribed by the taxing statute and no others.

In support of the contention that the statute does not cast an absolute duty upon the abutting owner, it may be pointed out that the statute covers not only the sidewalk but also the curb and gutter in front of the abutting property. It requires, therefore, not only the repairing of the sidewalk but also the paving. That it is permissive and not an absolute duty is in accord with the practical construction which the statute has received for many years.

The judgment should be affirmed, with costs to the respondent.

ADEL, J. (dissenting). Section 82d1-5.0 of the Administrative Code of the City of New York imposed upon plaintiff the duty of keeping and maintaining in good repair the sidewalk in which the hole appeared. The plaintiff testified that she was familiar with the condition of the sidewalk. She admits that, according to her judgment, it was a likely source of danger. When she stepped into the hole it would seem that there was present contributory negligence or assumption of risk. Furthermore, it appears that plaintiff is seeking to hold the municipality liable for the same omission of which she is guilty. This she may not do. There should be reversal of the judgment and dismissal of the complaint.

TAYLOR, J. (dissenting). I dissent and vote to reverse the judgment and to grant a new trial upon the ground that as to the issue of contributory negligence the verdict is against the weight of the evidence.

HAGARTY and LEWIS, JJ., concur with CLOSE, P. J.; ADEL, J., dissents and votes to reverse the judgment and to dismiss the complaint, with memorandum; TAYLOR, J., dissents and votes to reverse the judgment and to grant a new trial on the ground that as to the issue of contributory negligence the verdict is against the weight of the evidence, with memorandum.

Judgment affirmed, with costs.