Lenore **BARASH** and Joseph Barash, Plaintiffs,

v.

**K L M ROYAL DUTCH AIRLINES,** Defendant.

No. 65–C–727.

United States District Court, E. D. New York.

Feb. 16, 1970.

Haight, Gardner, Poor & Havens, New York City, for defendant (James J. Sentner, Jr., New York City, of counsel).

Kelner & Stelljes, New York City, for plaintiffs (S. Gilbert, New York City, of counsel).

*Memorandum of Decision and Order*

MISHLER, Chief Judge.

This is an action by Lenore Barash for personal injuries and by Joseph Barash for reimbursement for medical expenses incurred when a fractured ankle suffered by Lenore Barash was allegedly aggravated by the negligence and breach of contract of defendant KLM Royal Dutch Airlines (KLM). The issue of liability alone was tried before a jury pursuant to an order issued by the Honorable Jack B. Weinstein on March 7, 1969. The jurisdiction of the court is based on diversity of citizenship. 28 U. S.C. § 1332.

On July 23, 1963, Lenore Barash fractured her ankle at the railroad station in Venice, Italy and was taken to the Civil Hospital of Venice. That night, she telephoned her father, who was in New York, to inform him of the injury. Joseph Barash thereupon telephoned defendant, KLM, in an effort to make reservations for a flight to Italy. He testified that the reservation clerk assured him that KLM would make all arrangements necessary for his daughter's return to the United States and that there was, therefore, no need for him to make the trip. He further testified that defendant told him that his daughter would be driven to Milan Airport in an ambulance to enable her to keep her leg in a raised position and that she would be accompanied by a nurse. He was advised that his daughter would be taken from the ambulance to the airplane by stretcher and that she would be provided with nine seats both on the flight from Milan to Amsterdam and on the flight from Amsterdam to John F. Kennedy International Airport in New York.[1]

On July 27, 1963, Lenore Barash was driven to the airport in a limousine and was unable to keep her leg in a raised position.[2] She was, moreover, not ac-

1. Pursuant to a policy of the defendant, it promised to provide nine seats but requested payment for only three.

2. The trip from the hospital to the airport was approximately three hours in duration.

companied by a nurse. Upon her arrival at the airport at approximately 10:30 A.M., she was placed in a wheel chair and taken to the check-in counter. Renaldo Cesana, Assistant Station Manager for KLM at the Milan Lenato Airport, testified on behalf of defendant that he advised Miss Barash that the departure of the flight which she was scheduled to take would be delayed for 2 hours. He indicated that she expressed disappointment and a desire to return to the United States as quickly as possible. He told her of an earlier Al Italia flight to Amsterdam which would, in turn, connect with an earlier KLM flight to New York than the one originally booked. Mr. Cesana testified, moreover, that he informed Miss Barash that no provision could be made on either flight for stretcher service or for accommodations which would allow her to recline. Rather, she would be provided with a single first class seat on each flight. She nevertheless agreed to the suggested change in booking. Miss Barash testified that she was unaware of the arrangements agreed to by her father and defendant and simply accepted the accommodations offered.

The following special interrogatories were submitted to the jury by the court and were answered in the manner indicated:

1. Was defendant negligent? No.
2. Did defendant breach the contract of carriage? Yes.
3. Did plaintiff assume the risk of injury? Yes.
4. Was plaintiff contributorily negligent? Yes.

The court thereupon reserved decision concerning the entry of judgment pending its consideration of the question whether the findings that Lenore Barash assumed the risk of injury and was contributorily negligent bars plaintiffs' action for breach of contract.

■ The policy underlying the doctrine of assumption of the risk requires that it be considered as complete a bar to a personal injury action based on contract as to one based on negligence. A characterization of a plaintiff's conduct as an assumption of the risk is shorthand for the finding that plaintiff voluntarily released defendant from a duty which he would otherwise owe to plaintiff. "In its simplest and primary sense, assumption of risk means that the plaintiff, in advance, has expressly given his consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from a known risk arising from what defendant is to do or to leave undone * * *." Prosser, Torts § 67, at p. 450 (3d Ed. 1964).[3] See also Zurich General Accident & Liability Insurance Co. v. Childs Co., 253 N.Y. 324, 171 N.E. 391 (1930); McEvoy v. City of New York, 266 App. Div. 445, 42 N.Y.S.2d 746 (2d Dep't 1943), affirmed, 292 N.Y. 654, 55 N.E. 2d 517 (1944). A conclusion that this policy be denied application to contractual duties while continuing to receive approval when asserted as a discharge of the duty of ordinary care in negligence actions would involve the creation of a distinction without a difference. Actions for personal injuries, whether based on breach of contract or negligence, are essentially attacks upon a risk

3. Prosser set out two other uses of the term "assumption of the risk." Both are consistent with the basic character of the doctrine as descriptive of situations in which plaintiff discharges defendant from a duty owed plaintiff:

A second, and closely related situation, is where the plaintiff, with knowledge of the risk, voluntarily enters into some relation with the defendant which will necessarily involve that risk, and so is regarded as tacitly or impliedly

agreeing to take his own chances * * *.

In the third type of situation the plaintiff, aware of a risk already created by the negligence of the defendant, proceeds voluntarily to encounter it—as where, for example, an employee furnished with an unsafe machine continues to work with it after he has discovered the danger * * *." Prosser, *supra*, § 67, at pp. 450–51.

of injury created by the failure of defendant to perform a duty owed plaintiff. Negligence and breach of contract claims differ only in the source of the duty. Clearly, this difference can have no legal significance when the plaintiff, conscious of the risk so created, voluntarily chooses to encounter it. Fredendall v. Abraham & Strauss, 279 N.Y. 146, 18 N.E.2d 11 (1938); Razey v. J. B. Colt Co., 106 App.Div. 103, 94 N.Y.S. 59 (2d Dep't 1905); Bruce v. Fiss, Doerr & Carroll Horse Co., 47 App.Div. 273, 62 N.Y.S. 96 (2d Dep't 1900).

The jury's verdict that Lenore Barash assumed the risk of injury when analyzed together with the charge of the court must be considered as a finding that with knowledge of the risk of injury to her ankle created by the failure of defendant to provide an ambulance to transport her to the airport and by defendant's offer of a single first class seat on the flights from Milan to Amsterdam and from Amsterdam to New York, Lenore Barash voluntarily accepted the substituted accommodations. Such a finding bars her recovery in this action.

The claim for reimbursement for medical expenses asserted by her father, Joseph Barash, must similarly be rejected. Any right of action belonging to him in this regard is at best dependent upon his daughter's claim. Reilly v. Rawleigh, 245 App.Div. 190, 281 N.Y.S. 366 (4th Dep't 1935); Roher v. State, 279 App.Div. 1116, 112 N.Y.S.2d 603 (3d Dep't 1952).

The foregoing discussion makes it unnecessary for the court to determine whether contributory negligence can similarly be held to be a bar to an action

for personal injuries based on breach of contract.[4] See Mendel v. Pittsburgh Plate Glass Co., 25 N.Y.2d 340, 351, 305 N.Y.S.2d 490, 253 N.E.2d 207 (1969), (Breitel, J. dissenting).

The complaint is dismissed, and it is So ordered.

The Clerk is directed to enter judgment in favor of the defendants and against the plaintiffs dismissing the complaint, together with costs.

---

4. Prosser, discussing the availability of the defense of contributory negligence in a breach of warranty action, wrote:

There has been ostensible, and quite superficial, disagreement over whether contributory negligence is available as a defense where the action is one for breach of warranty. A few decisions have said flatly that it is not. The greater number have said quite as flatly that it is * * *. Those which have permitted the defense all have been cases in which the plaintiff has discovered the defect and the danger, and has proceeded nevertheless to make use of the product. They represent the form of contributory negligence which consists of deliberately and unreasonably proceeding to encounter a known danger, and overlaps assumption of risk * * *. Prosser, *supra*, § 95, at pp. 656–57.