Janet Kulaga et al., Appellants, *v.* State of New York, Respondent. (Claim No. 49770.)

Fourth Department, June 25, 1971.

*Ward, Gorman & Marx* (*John Marshall Gorman* of counsel), for appellants.

*Louis J. Lefkowitz, Attorney-General* (*Jeremiah Jochnowitz* and *Ruth Kessler Toch* of counsel), for respondent.

Cardamone, J. Claimants appeal from a judgment dismissing their claims for damages resulting from an assault upon them by an escaped convict. The Trial Judge held that the State was negligent in its supervision of Moseley, a convicted murderer whose vicious and remorseless character was known to the authorities and whose confinement was not merely for punishment but also for the protection of society.

We are asked to conclude, as the trial court did, that claimants are barred from recovering damages against the State upon the ground that claimants assumed the risk and were guilty of con-

tributory negligence. This we cannot do. One cannot be found to have assumed the risk unless it appears that at the time thereof he knew and fully appreciated the danger which he was about to encounter (*McEvoy* v. *City of New York,* 266 App. Div. 445, 448, affd. 292 N. Y. 654; 1 N Y PJI 2:55 and Comment, p. 139). In our view claimants did not have such knowledge as to appreciate fully the danger into which they entered.

We also find that the record contains insufficient evidence to support a determination that claimants' conduct precludes them from recovering against the State. The following analysis of the facts leads inescapably to this conclusion.

For three years prior to this incident, the claimant, Mrs. Kulaga, had been maintaining her widowed mother's unoccupied premises at 278 Dewey Avenue, Buffalo, New York. Pursuant to these responsibilities Janet Kulaga visited the premises approximately once a week to make sure that the furnace was operating and that heat was being maintained, snow removed, lawn mowed, and she arranged to have the house cleaned on a weekly basis. Mrs. Kulaga's mother lived with these claimants and their three small children on Grand Island, New York. Mrs. Kulaga had lived at 278 Dewey Avenue as a child and until sometime after her marriage. She clearly had a right, and even a responsibility, to visit these premises on a regular basis.

She testified that on March 20, 1968 she received a phone call at about 2:00 P.M. from the New York State Employment Agency regarding a cleaning woman sent to 278 Dewey Avenue. She thought it was a practical joke since she had not requested anyone be sent there. Nevertheless she called a former neighbor and asked her to check on the house. It was reported back to her (following an inspection by the neighbor's son) that the doors were locked and nothing was wrong. Mrs. Kulaga then relayed this information to the employment agency. Later that evening at 8:00 P.M., Mrs. Kulaga received a phone call from one Zella Moore, who identified herself as the cleaning woman sent by the employment agency. Zella Moore informed Mrs. Kulaga that there were orange and apple peels on the floor and that one of the beds looked as if it had been slept in. Mrs. Moore reportedly told Mrs. Kulaga, '' something funny is going on, don't let your mother go in the house alone ''. Mrs. Moore also told Mrs. Kulaga that she left the house about 2:00 P.M. because she became frightened when no one had come by that time. When Mrs. Kulaga finished speaking with Zella Moore, she immediately called the Buffalo Police Department and asked them to check

the house, telling them of the previous phone call and telling them that there were no valuables in the house and that it was unoccupied. The police officer told claimant that they would check into it. Later that evening claimant remembered that her grandfather had left a gun in the attic, and she became concerned that if teenagers obtained entrance to the house they might injure themselves. Accordingly, the next morning at 7:15 A.M. she called the police again and told them about her concern regarding the gun and asked the police to accompany her to the house to remove it. She testified that she was told that the police shifts would be changing and that she should call back at 8:30 A.M. Mr. and Mrs. Kulaga decided, however, to check the house that morning prior to Mr. Kulaga's going to work. Mrs. Kulaga testified that when she and her husband arrived at the house, they walked around the back. She saw that one of the panes in the cellar window was broken, that it was a small 12-inch by 18-inch pane, and she further testified that she remembered saying to her husband '' it must have been children getting in there; it would take a very small person to crawl through that opening ''.

Albert Andrews, a police officer employed by the City of Buffalo, on duty March 20, 1968 at Precinct 16, testified that this precinct included Meyer Memorial Hospital, the hospital that Moseley escaped from, and also included the Dewey Avenue premises. He stated that the police were aware that Moseley had escaped, were on the look-out for him, and had searched the area on the afternoon of the 20th, but that the circumstances in connection with 278 Dewey Avenue and the cleaning woman and the call from Mrs. Kulaga did not occasion any connection in his mind with the Moseley affair. He said that '' a cleaning woman in the house wouldn't have any application '' to the Moseley escape. In fact the police suggested that Mrs. Kulaga run over to the house to see if anything was missing.

Hugh Neff, the police officer on duty the following morning, March 21, 1968, testified as a witness for the State. He agreed that anyone with a vacant house would want to get the gun out. He also stated that there was nothing in his conversation with Mrs. Kulaga or his understanding of what went on the day before that would make him suspicious of Moseley being in the house, and that he did not mention the possibility of this to Mrs. Kulaga.

Thus, there were three phone calls to the Police Department (two by claimants and one by the employment agency) which never alerted the police or put them on suspicion that someone dangerous was lurking on the premises, let alone an escaped

and dangerous killer. These police, charged with the responsibility for apprehending this escaped convict, did not apprise claimants of even the possibility of danger.

Contributory negligence, like negligence itself, is based upon a duty owing to prevent injury. In the case of contributory negligence the duty is that the plaintiff avoid injury to himself. Every person is required to use reasonable care in that regard. The degree of care required is ordinary care only. In other words, the plaintiff must use for his own protection the care which a reasonable, prudent person would use under similar circumstances to protect himself from injury. (*Clark* v. *Traver*, 205 App. Div. 206, affd. 237 N. Y. 544; 1 Warren's Negligence, Contributory Negligence, §§ 1.01, 10.10.) Claimants' conduct is to be evaluated in its setting in the circumstances, and claimants are entitled to make assumptions that are reasonable in the light of them (James, Contributory Negligence, 62 Yale L. J. 691, 725).

Under these circumstances and considering the responsibility as well as the right that claimant Janet Kulaga had to be on the premises at 278 Dewey Avenue, such entrance by her onto the premises may not be construed to be other than the conduct that a reasonably prudent person would use under like circumstances to protect himself from injury. Her actions in calling a former neighbor, the employment agency, and the police for what she believed to be the possible danger that might result from children, or teenage vandals, and the fact that she was careful enough to take her husband with her, were sufficiently prudent in view of what she knew, and should not be construed to be contributory negligence. In brief, this record reveals that the claimant Janet Kulaga was, as a matter of fact, not guilty of any contributory negligence which should bar her recovery here.

However, even if we assume some degree of contributory negligence on the part of these claimants as regards other risks, nevertheless when the harm to the claimants does not result from the hazard which their conduct has created but results in some other manner, such other contributory negligence, if such there be, does not bar their recovery (Restatement, Torts 2d, § 468).

Just as negligence is actionable only on account of the harm which was within the scope of the risk (*Palsgraf* v. *Long Is. R. R. Co.*, 248 N. Y. 339) so claimants' entry into Mrs. Kulaga's mother's house may have been negligent with respect to the hazard of being set upon by children or teenage vandals, but was unrelated to the risk of being raped and robbed by an escaped

killer (2 Harper and James, Law of Torts, Contributory Negligence, § 22.0, p. 1230; *Kinderavich* v. *Palmer,* 127 Conn. 85, 98). As Prosser observes, there is general agreement that the difference between negligence and contributory negligence is that the latter bars recovery only when injury results from a hazard or risk which makes the plaintiff's conduct negligent, but the plaintiff is not barred when his failure to exercise reasonable care for his own safety exposes him to a foreseeable risk or injury through one event and he is, in fact, injured through another which he could not foresee (Prosser, Torts [3d ed.], pp. 431–432; Boehlen, Contributory Negligence, 21 Harv. L. Rev. 233). Again, "where a plaintiff negligently exposes himself to one danger he is not barred from recovery by contributory negligence where the injury is received through another danger resulting from defendant's negligence. This would seem clearly to be the rule applied by the courts of this State." (1 Warren's Negligence, Contributory Negligence, § 11.04, p. 462; *Underhill* v. *Major,* 220 App. Div. 173, affd. 247 N. Y. 525; *Webster* v. *Rome, Watertown & Ogdensburg R. R. Co.,* 115 N. Y. 112).

The facts in the present case clearly and unequivocally establish that these claimants, even assuming that they failed to exercise reasonable care for their own safety which exposed them to a foreseeable risk of injury from one cause, were in fact injured through another event which they could not possibly have foreseen. Only by viewing the facts from hindsight and drawing the most extreme inferences could the claimants be charged with foreseeing this danger to their safety. Since the trial court could not reach the conclusion that these claimants were guilty of contributory negligence under any fair interpretation of the evidence, we must reverse. (*Citta* v. *State of New York,* 35 A D 2d 288.)

We conclude, therefore, that these claimants were not guilty of contributory negligence on the conceded facts in this record which would bar their recovery. The judgment of the trial court dismissing their claim should be reversed and the matter remitted for assessment of damages.

WITMER, J. (concurring). I concur in the result reached by the majority, but on the limited basis that although claimants were guilty of contributory negligence which was the direct cause of their injuries, they should not be barred from recovery, because the consequence of their conduct was not reasonably foreseeable.

At the outset it should be noted that although the State did not cross-appeal (the judgment being in its favor), it has the right to contend on this appeal that the Trial Judge erred in

holding that the State was negligent in permitting Moseley to escape and that such negligence was a proximate cause of claimants' injuries, rendering the State subject to liability therefor (CPLR 5501, subd. [a], par. 1; 10 Carmody-Wait 2d, New York Practice, §§ 70:336–70:337; cf. *Hutter* v. *Levitt & Sons,* 36 A D 2d 758). Nevertheless, I think that we must agree with the Trial Judge's holding in this respect. The nature of Moseley, the offending prisoner, his background and the reasons for his confinement make it clear that the State knew of his dangerous character and that special security measures were required to insure his confinement (cf. *Williams* v. *State of New York,* 308 N. Y. 548). The manner in which the State handled Moseley, resulting in his escape after release from hospital care, was properly found to constitute negligence. The principle underlying *Weiss* v. *Fote* (7 N Y 2d 579), relied upon by the State, to wit, that a trier of the facts may not be permitted to pass upon the reasonableness of the judgment of a governmental body, does not apply to relieve the State from liability for such conduct.

Turning to the question of claimants' contributory negligence, there are some facts contained in the record in addition to those recited in the majority opinion, which point up the negligent conduct of claimants and which should be acknowledged in the face of our limited application herein of contributory negligence principles. Such additional facts are: the cleaning lady advised Mrs. Kulaga that when she went to the house she found $10 on the desk with a note requesting her to do general cleaning; Mr. Kulaga had seen Mr. Moseley's picture in the daily newspaper and had read therein that he had escaped and was at large; on the night before visiting the house Mrs. Kulaga asked Mr. Kulaga to go over and check the house, and he said, "Heck, no, I won't go over there tonight". Claimants also checked with Mrs. Kulaga's uncle and ascertained that he had not called for a cleaning lady to go to the house. The next morning claimants impatiently by-passed the police and decided to check the house themselves. They walked around the house and found a cellar window broken out, but they were not deterred from entering, nor moved to go to the home of the neighbor who had previously checked the house doors for them, to call the police again and obtain assistance on entering. Instead, Mrs. Kulaga got out her key to unlock a door to the house and Mr. Kulaga went to his automobile and took out a crowbar and carried it into the house as they entered together. Inside, they walked up a few steps to the main floor level and on opening a door thereto found a

man to their left in the hall holding a gun. The man said, " Come in — I won't hurt you ", and on seeing the crowbar in Mr. Kulaga's hands said, " Are you expecting trouble? " Mr. Kulaga answered, " Yes ". The intruder asked claimants if they knew who he was, and Mr. Kulaga said, " Yes, you are Moseley " (recognizing him from the newspaper picture and article of the night before), and Moseley said, " I am the fellow that escaped from Meyer (hospital) ". He ordered the crowbar dropped, which it was; he tied up the claimants, took off their clothes, raped Mrs. Kulaga, took their money and Mr. Kulaga's clothes and car keys and left with their car.

In view of all the facts, I believe that we must agree with the Trial Judge that claimants did not exercise reasonable care for their safety on entering the house. As the direct result of their entry therein, they received the injuries for which they sue in this action, that is, their conduct was the proximate cause of their injuries.

In most cases the damages which directly ensue from negligent conduct are reasonably foreseeable, and the actor is held responsible for such conduct. Thus, if the fate which befell claimants on entering their house were reasonably foreseeable we would agree with the conclusion of the Trial Judge that claimants' conduct bars them from recovering damages herein. It must be borne in mind, however, that even the police, who were looking for Moseley, did not relate him to this house. Thus, however imprudent claimants were on entering the house without police assistance in light of facts which they then knew, it cannot be found that what then occurred to them was reasonably foreseeable.

We have a case, therefore, wherein the direct consequence of claimants' negligent conduct was not reasonably foreseeable. In few cases has this problem occurred and been considered in detail (see *Palsgraf* v. *Long Is. R. R. Co.*, 248 N. Y. 339; *Overseas Tankship [U.K.], Ltd.* v. *Morts Dock & Eng. Co. [The Wagon Mound]*, [1961] A. C. 388, [1961] 1 All Eng. Rep. 404). In some cases, negligence (contributory negligence) has been ruled out on the theory of remoteness or intervening cause; but that explanation does not dispose of the fact that the actor's conduct was a direct cause of his injuries. In the *Overseas Tankship* case (*supra*), the House of Lords expressly overruled a 1921 case (*In re Polemis*, 3 K. B. 560 [1921] All Eng. Rep. 40) which had held a defendant liable for all damages directly resulting from the defendant's negligent act. In the *Overseas Tankship* case defendants' employees negligently spilled oil into a

harbor. The oil spread across the harbor and was ignited from a spark from a shipbuilder's torch and fire damage resulted. The court held that the fire damage was unforeseeable and that the defendant was, therefore, not liable for it. In overruling the *Polemis* case the court said ([1961] A. C. 388, p. 422) : "For it does not seem consonant with current ideas of justice or morality that, for an act of negligence, however slight or venial, which results in some trivial foreseeable damage, the actor should be liable for all consequences, however unforeseeable and however grave, so long as they can be said to be ' direct ' "; and the court continued at page 423: "For, if it is asked why a man should be responsible for the natural or necessary or probable consequences of his act (or any other similar description of them), the answer is that it is not because they are natural or necessary or probable, but because, since they have this quality, it is judged, by the standard of the reasonable man, that he ought to have foreseen them. Thus it is that, over and over again * * * liability for a consequence has been imposed on the ground that it was reasonably foreseeable or alternatively on the ground that it was natural or necessary or probable. The two grounds have been treated as coterminous, and so they largely are. But, where they are not, the question arises to which the wrong answer was given in *Polemis*. For, if some limitation must be imposed upon the consequences for which the negligent actor is to be held responsible — and all are agreed that some limitation there must be — why should that test (reasonable foreseeability) be rejected which, since he is judged by what the reasonable man ought to foresee, corresponds with the common conscience of mankind, and a test (the ' direct ' consequence) be substituted which leads to nowhere but the never-ending and insoluble problems of causation ".

At page 424 the court added: "After the event even a fool is wise. But it is not the hindsight of a fool; it is the foresight of a reasonable man which alone can determine responsibility. The *Polemis* rule by substituting ' direct ' for ' reasonably foreseeable ' consequence leads to a conclusion equally illogical and unjust ". The court further stated (p. 426) that if foreseeable damage and also unforeseeable damage result from negligent conduct, the fact that the defendant may be held liable for the foreseeable consequences of his negligence does not require that he also be held responsible for the unforeseeable consequences thereof. "Each of them rests on its own bottom and will fail if it can be established that the damage could not reasonably be foreseen ".

I am mindful that with respect to a defendant's negligent conduct he may often be held liable for a resulting injury which is not the normal consequence of such conduct (see 41 N. Y. Jur., Negligence, § 37). Although this principle has been enunciated for the protection of society against the negligent acts of individuals therein (see Prosser, Law of Torts [3d ed.], Unforeseeable Consequences, pp. 288–289), it must be applied in light of the totality of precepts in the law of negligence, including the rule of reasonable foreseeability. The *Overseas Tankship* case (*supra*), although dealing with negligence of a defendant and not of a plaintiff, is directly in point in this respect, and the *Palsgraf* case (*supra*), also supports this principle.

Moreover, in the case at bar the question is whether claimants were contributorily negligent. As distinguished from the negligence of a defendant, the doctrine of contributory negligence was established to prevent a negligent plaintiff from recovering for an injury which he helped to cause. The duty which an individual owes to himself is of less magnitude than that which he owes to society in general (*Rossman* v. *La Grega,* 28 N Y 2d 300; and see Restatement, Torts 2d, § 468, Comment *c*; Prosser, Law of Torts, Contributory Negligence, pp. 426–430). It is also noted that the doctrine of contributory negligence has been criticized with suggestions for its limitation (2 Harper and James, Law of Torts, Contributory Negligence, §§ 22.3 and 22.4, p. 1207 *et seq.*; Prosser, Law of Torts, p. 428; and see *Rossman* v. *La Grega, supra*).

In view of the above considerations, I am forced to conclude that despite claimants' knowledge that Moseley was at large, that apparently some stranger had entered and might be in the house, possibly having entered through a broken window, and that a gun had been left in the house, it was not reasonably foreseeable that a dangerous man, such as Moseley, would be there and would assault them upon their entry to inspect the house (see Prosser, *supra,* pp. 431–432; 2 Harper and James, Law of Torts, § 22.10, pp. 1230–1231; 1 Warren's Negligence, Contributory Negligence, §§ 10.02 and 11.04), and that claimants should not be barred from recovering herein because of their conduct.

Accordingly, I concur in the decision for reversal of the judgment and the remission for assessment of claimants' damages.

MARSH and GABRIELLI, JJ., concur with CARDAMONE, J.; DEL VECCHIO, J. P., and WITMER, J., concur in result in an opinion by WITMER, J.

Judgment unanimously reversed on the law and facts, with costs, and matter remitted to the Court of Claims for assessment of damages.