■ ANGELINE G. JANUSZKO, as Administratrix of the Estate of DEBRA J. JANUSZKO, Deceased, et al., Appellants, v STATE OF NEW YORK, Respondent. (Claim No. 57431.)—Judgment, Court of Claims, entered August 31, 1976, affirmed, without costs, on the opinion of Lengyel, J. Kane, J. P., Staley, Jr., Main and Larkin, JJ., concur; Mikoll, J., dissents and votes to reverse in the following memorandum. Mikoll, J. (dissenting). I respectfully dissent. The Court of Claims found that Joseph Baldi had been arrested on September 5, 1971 and charged with the attempted murder of a police officer, unlawful possession of a loaded revolver, burglary and criminal possession of stolen property in New York City Criminal Court for Queens County. The court ordered the defendant transferred to Kings County Hospital for mental observation. He was examined by two psychiatrists who adjudged him unable to understand the proceedings and unable to assist in his defense. On October 14, 1971 a proceeding was held in Kings County Supreme Court to confirm the findings of the psychiatrists and Baldi was committed to the Commissioner of Mental Hygiene for care and treatment in an appropriate institution for a period not to exceed 90 days. The court order directed that when Baldi is found not to be incapacitated, notice in writing of such fact shall be given by the person in charge of the institution to the committing court and the District Attorney in accordance with the Criminal Procedure Law (see CPL 730.60, subd 2). Baldi was transferred to Mid-Hudson Psychiatric Center. Three copies of the court order were forwarded and delivered to the center, which was an independent short-term maximum security hospital. The center was to give intensive treatment with a view to rapid return to court to stand trial. The District Attorney of Queens County was advised of defendant's placement in the facility. Further information was requested by Mid-Hudson regarding the defendant's background from the District Attorney of Kings County, which letter was never answered since it had been directed to the wrong county. On November 30, 1971, Baldi was transferred to Creedmoor State Hospital. The order of transfer dated November 23, 1971 required the director of Creedmoor to receive the patient

upon presentation of the original order, together with the original admission paper and the case record. In December, 1971 Baldi's treating psychiatrist, Dr. Gociar, decided that Baldi was no longer incapacitated and, without legal authority, permitted him to go home on several occasions. On December 23, 1971, the Queens County Grand Jury indicted Baldi for the six offenses charged in the original felony complaint following his arrest. No notice of the indictments was ever sent to Mid-Hudson or elsewhere and no detainer was filed with the Mental Hygiene Department as required by law (see CPL 730.40, subd 5). On January 2, 1972, Dr. Gociar wrote a letter to the District Attorney of Kings County enclosing a certificate of custody for Joseph R. Baldi and the court docket number. A copy was mailed to the "lower court" in Brooklyn. These letters indicated that Baldi was ready for a return to court. Neither agency responded to these letters, since they had been improperly sent to Brooklyn rather than to Justice Judge as ordered. Dr. Gociar thereafter discharged Baldi on January 21, 1972. On June 17, 1972, Baldi entered the home of Debra Januszko, a 15-year-old girl, and stabbed her in the chest causing her death. He was indicted and found guilty of her murder on December 19, 1974. He was also found guilty of attempted murder, possession of a weapon and burglary in the second degree from the events of September 5, 1971, which had resulted in his commitment for observation. The trial court found that the examination reports regarding Baldi should have been submitted to the local criminal court which had ordered the examination, that is, Criminal Court of the City of New York, Part 1-A, County of Queens (CPL 730.30), and thereafter the local criminal court should have issued the temporary order of observation (CPL 730.40, subd 1). Instead, the examination report went to a Criminal Term of the Supreme Court and the order of observation was issued by Justice Judge. Dr. Gociar failed to comply as required by court order with the direction of Justice Judge to give notice to her court and to the District Attorney of Baldi's change of mental condition. Further, the Queens County Supreme Court where the indictments against Baldi were filed, failed to comply with CPL 730.40 (subd 5) by its failure to direct the Sheriff to take custody of the defendant at the institution and bring him in for arraignment upon the indictment. The Court of Claims found the State, through its employee, Dr. Gociar, to be negligent, but dismissed the claims for lack of proximate cause and cited *Williams v State of New York* (308 NY 548) as determinative. The court concluded that it was not foreseeable that Baldi would murder anyone when released from the hospital and, therefore, found that liability did not attach to the State. The claimants urge on this appeal that the actions of Baldi were foreseeable and that the trial court erred in concluding, as a matter of law, that Baldi's murder of Debra Januszko after his negligent release was unforeseeable. The trial court erred, claimants contend, in relying on Dr. Gociar's opinion that Baldi was of no danger to the community as the governing standard in the case. Claimants urge that the standard of a reasonable prudent man is the correct test to be applied on the question of foreseeability and that the matter should not be decided simply on the basis of Dr. Gociar's professional opinion. The facts of this case as found by the trial court lead inexorably to the conclusion that but for the failure of the State's employee, Dr. Gociar, to follow the court order served upon the State Commissioner of Mental Hygiene, the tragic chain of events leading to the death of Debra Januszko would not have occurred. In violating the mandate of the Criminal Procedure Law which required him to notify the court and prosecutorial authorities of Baldi's ability to participate in his defense to the charges of at-

tempted murder of a police officer and other crimes, the State negligently released a psychotic, retarded individual who was being held in connection with an attempted murder charge. The court grounded its decision on the concept of lack of foreseeability. In relevant part it said: "In my opinion, despite the felony complaint with its charges of attempted murder etc., when one considers the fact that the two committing psychiatrists did not consider Baldi dangerous; when the superior court, after hearing, did not find him dangerous; and, when the treating psychiatrist did not consider him dangerous, it was not foreseeable on January 21, 1972, that Baldi would murder Debra Jane Januszko or anyone else on June 17, 1972, or any other date." An examination of the affidavit and application to the court for mental observation of Baldi made by Dr. Alfred Vrejan and Dr. Anthony Jimenez discloses that the psychiatrists made no general finding that Baldi was not dangerous to the public, as the trial court concluded, but found rather that Baldi had impaired capacity to understand or assist in his own defense. The only finding relevant to the question of dangerousness was whether he could be referred to an institution operated by the Department of Mental Hygiene without danger to other patients there. There was no finding made of his ability to function at large in the unstructured framework of society without harm to others. Likewise, Justice Judge's confirmation of the doctors' findings is related to Baldi's capacity to understand the criminal charges against him and whether it was appropriate to place him in an institution operated by the Department of Mental Hygiene. There was no finding by the court that Baldi was not dangerous. To the contrary, it should be noted that a high bail had been set by the Queens County Criminal Court which had first ordered his commitment for observation. It is further to be noted that in this case, unlike the *Williams* case, there were present elements indicating that Baldi was dangerous. He had been charged with the attempted murder of a police officer while in possession of a dangerous loaded weapon. While under treatment, he had made statements indicating his willful possession of the loaded revolver. The records of his confinement while in the custody of the Mental Hygiene Department indicated aggressiveness and hostility on his part when thwarted or frustrated. The records also revealed that he was a retarded psychotic who had spent four years on a prior occasion in a mental institution. The attending physician failed to attend to his duties in making a thorough appraisal of information available to him from Baldi's case record. Coupling this with his violation of the mandate of the Criminal Procedure Law, that is, his failure to notify the court and the prosecutor of Baldi's ability to participate in his defense, it becomes clear that the legal concept of *Williams v State of New York (supra)* is inapplicable in this case. The responsibility for the freeing on bail of an arrested felon is one reserved to a court of law and not to a physician assigned to examine and treat a prisoner suspected of mental incapacity to participate in his trial. To isolate the State from responsibility in such circumstances because of its agent's professional judgment is not justified by the facts or law. There is absent in this situation the strong public policy that served to protect the State from liability in *Williams v State of New York (supra)*. The negligence of the State under these circumstances is not unlike the cases involving negligence on the part of the State in permitting the escape of prisoners who subsequently harm members of the community (see *Thall v State of New York*, 42 AD2d 622; *Kulaga v State of New York*, 37 AD2d 58; *Weihs v State of New York*, 267 App Div 233). While the State may not be found liable for the exercise through its agents of professional judgment, it may be liable for negligent inattention to

duty *(Bartlett v State of New York,* 52 AD2d 318). There has been more than an adequate demonstration in the record of a violation by the State's agents of the statutory commands of the Criminal Procedure Law. This inattention to duty is reasonably and practically connected to the injury to Debra Januszko. It was a proximate cause of her death. The judgment below should be reversed, and judgment entered for claimant and the matter remitted for further findings on the question of damages. [93 Misc 2d 1041.]